THEODOCIA ATER *vs.* MAGGIE B. McCLURE *et al.* Appellees.— (WILLIAM F. ATER, Appellant.)

*Opinion filed April 21, 1928.*

1. WILLS—*what is not undue influence.* Influence secured through affection, even if coupled with persuasion, is not undue influence unless the testator is deprived of free agency; nor is influence secured through kindness or care undue influence.

2. SAME—*facts must be alleged which show undue influence.* Where a will is contested on the ground of undue influence, it is not sufficient to aver undue influence as a conclusion but facts must be stated warranting the conclusion and which go to the extent of showing that thereby the testator was deprived of his free agency.

3. SAME—*what not sufficient to warrant inference of undue influence.* That a will was executed in the home of the testator and his wife in the absence of all other heirs of the testator is not a basis for the inference of undue influence exerted by the wife, to whom the entire estate was given.

4. SAME—*when demurrer should not be sustained to part of bill charging insufficient execution of will.* Where a bill to contest a will charges undue influence, implied revocation and insufficient execution, a demurrer is properly sustained to those portions charging undue influence and implied revocation where the facts alleged are not sufficient for either ground of contest, but the demurrer should not be sustained to the charge of insufficient execution where facts are alleged showing the omission of essential statutory requirements.

5. SAME—*when a will cannot be contested on ground of implied revocation.* The charge of implied revocation in a bill to contest a will is insufficient and subject to demurrer where no facts are alleged showing any sort of revocation under the statute, the only facts alleged being set out merely to sustain the argument that because the testator was many years younger than his wife and expected to survive her, he would not, as he did, have given her all his estate had he known that he would die first while she was in her dotage and subject to the influence of her own heirs as against his, and that his death under such circumstances should be held to impliedly revoke the will by operation of law.

APPEAL from the Circuit Court of Piatt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

HERRICK & HERRICK, for appellant.

GEORGE M. THOMPSON, and REDMON & REDMON, for appellees.

Mr. COMMISSIONER CROW reported this opinion:

Theodocia Ater filed a bill to contest the will of her brother, John McClure, deceased. The circuit court sustained a demurrer to the bill and dismissed it for want of equity. Complainant subsequently died and her husband was substituted in her stead, and he has appealed from the decree.

By the second clause of the will the testator left all of his personal estate of every kind to his wife. By the third clause he left all of his real estate to her, and by the fourth clause he appointed her executrix of the will. It was executed August 19, 1905. On September 3, 1923, the testator died. On November 12, 1923, the will was admitted to probate. The testator left no surviving child nor descendants of a child. His only heirs were his widow, a brother, a sister, and nephews and nieces. The sister, Theodocia Ater, died December 5, 1924.

As the decision must rest upon the averments of the bill it is deemed necessary to present it fully. As abridged in the brief of counsel for appellant the bill presents the questions for decision, and it is adopted substantially as therein stated.

The bill avers that John McClure by his will professedly devised and bequeathed all of his estate to his wife, Maggie B. McClure. The first clause directs that all of his just debts shall be paid. The second bequeaths all personal property to his wife. The third devises all of his real estate to her. The fourth nominates her as executrix of his will. Letters of administration with the will annexed were upon her nomination granted to Charlie Baker. The fourth paragraph of the bill alleges that for several years previous to

the date of the execution of the will of McClure, and there-after, Maggie B. McClure had a captivating influence over him, whereby she obtained from him the granting of all her petitions and requests for personal favors; that his pur-ported will was executed in his home in the presence of his wife, the sole beneficiary, and in the absence of all his other heirs-at-law who had an equal claim upon his bounty; that the purported will was not his free and voluntary act but was the result of undue influence of his wife over him, prejudicial to all of his heirs-at-law. The fifth paragraph alleges that the purported will was not duly attested as re-quired by law, in that the testator did not execute it in the presence of the attending witnesses thereto, that they did not execute it in the presence of the testator and in the presence of each other, nor did he publish or acknowledge it to the attesting witnesses, nor to any two of them, to be his act and deed. Paragraphs 6 to 11 of the bill allege, in substance, that the testator was born in 1856 and inter-married with his wife in about the year 1886, and that he was then about thirty years of age and she about fifty years of age; that he was then in possession of 193 acres of land in Piatt county and she was possessed of about 333 acres of land in that county; that at that time about all of his surplus funds had been invested in land and he did not have much personal estate; that after the execution of the purported will he acquired 80 acres of land by inheritance from his father in the year 1906; that in 1907 his mother died and left him a small legacy; that in 1912 he purchased 80 acres of land; that at the date of his death he was pos-sessed of about 352 acres of land and a personal estate of about $60,000; that 160 acres of the land owned by him at the time of his death was received from his father either as a gift or as an inheritance, and that he owed practically no debts; that at the time the parties were married she was in poor and feeble health and so continued during all her

married life; that during all of that time he nursed and cared for her in the most kind and affectionate manner; that during the last five or more years of their married life her health was so poor and feeble that she was confined to her home most of the time and was unable to take an extended trip either for business or pleasure; that he was a man of robust health during all of his life; that his death was very sudden and unexpected by himself, his wife or any other persons and was the result of a stroke of apoplexy; that after she attained the age of seventy years he firmly believed that he would survive her; that for more than ten years previous to his death he anticipated that she would not live much longer; that as time went on he anticipated her death at earlier periods of time, and during the last year or two of his life he expected her to die almost any day because of her age and feeble health; that at the date of the execution of his will she was about sixty-nine years of age and of sound and disposing mind and memory; that she was capable of resisting attacks of undue influence of the heirs of herself and her husband; that she was then capable of either renouncing the will or otherwise adjusting the equities between the two lines of heirs of herself and her husband; that at the date of his death she was eighty-seven years of age; that her mental capacity to transact business was then limited by her age; that at that time she did not have the physical ability and mental capacity to resist attacks of undue influence of his and her heirs or to adjust the equities in his estate between the two lines of heirs and herself without the advice of persons having an equal claim for such equities; that at his death she was, and now is, in the exclusive care and custody of certain nieces and nephews of her own blood and has no opportunity to counsel with his heirs-at-law out of the hearing and presence of said nieces and nephews; that neither he nor she anticipated that she would survive him or that she would ever acquire his property under the will; that he repeatedly

made remarks during the last few years of his life indicating that he had made another will or that he intended to make other disposition of his property than in his will; that he frequently expressed his intention of re-marrying after her death, and that he intended to leave heirs (meaning children) to inherit his estate; that at the time of his death he had an elaborate wardrobe of new wearing apparel which he had previously accumulated in anticipation of her death and of an intended trip west. The bill charges that by virtue of the facts and circumstances set out showing the changed condition attending the lives of the testator and his wife as to his estate, his family and his obligations to his wife and all his heirs-at-law, there was an implied revocation of his purported will, and that by means thereof it was revoked by operation of law. The prayer for relief was that the instrument in writing and the probate thereof may be set aside and declared null and void and not the will of John McClure and that his estate be distributed among his heirs according to law, etc. Maggie McClure, and Charlie Baker, administrator with the will annexed, filed a general and special demurrer, and as special ground averred that the bill does not show that complainant is entitled to any relief in equity and does not show any facts which amount to an implied revocation of the will. The demurrers were sustained by the trial court and a decree was entered that complainant's bill as amended be dismissed for want of equity at his cost.

The will under consideration was before this court in *McClure* v. *McClure,* 319 Ill. 271. The purpose of the bill in that case was to have the will construed. It was decided that the last sentence of the third clause is not ambiguous, and is sufficient to pass not only property owned by the testator at the time he executed the will but property thereafter acquired and owned by him at his death.

It is argued that the will of John McClure was the result of undue influence exerted in its procurement by his

wife. The averments of the bill show that she was twenty years older than he. When the will was executed he was forty-nine and she sixty-nine years old. At that time he owned 193 acres of land and she 330 acres. Subsequently he acquired other lands, and at his death he owned 352 acres and a personal estate of $60,000. Mrs. McClure was in a bad state of health while he was strong and robust. He nursed and cared for her in the most kind and affectionate manner during the last five or more years of his life. During that time her health was poor. She was feeble and confined to her home most of the time and unable to take an extended trip for business or pleasure. McClure died suddenly of apoplexy. After she attained the age of seventy years, and thereafter, he believed he would survive her. More than ten years before his death he believed she could not live much longer. As time passed he became more expectant of her death, and "during the last year or two of his life he expected her to die most any day because of her age and feeble health." From the averments of the bill the inference seems to be that because she did not die sooner, in some way or manner his will is affected as a muniment of title. Certainly it cannot be contended that the alleged expectation of life after, or even before, the will was executed has any semblance of undue influence rendering the will invalid. If McClure in fact had such expectation of his survival or expectation of her death when he was making the will, there is no element of undue influence, within the oft-repeated decisions of this court, rendering his will subject to attack. Wills, and testamentary dispositions of property, always imply the survival of legatees and devisees beyond the life of the testator. More impertinent to the relief sought by the bill are the averments of his intended re-marriage, his intended travel in western States, and his wardrobe prepared, as it is said, for the occasion. Lawsuits cannot be tried on conjecture. If facts, as bases for determining rights, are stated they must have a known re-

lation to the questions to be tried. The statement of facts in the bill could have had no influence upon the mind of the testator when engaged in the business of making his will. If not operating then, they do not affect its validity. None of the facts stated afford a basis for contesting the will on the ground of undue influence. As to them the demurrer to the bill was properly sustained. Influence secured through affection is not undue influence; (*Francis* v. *Wilkinson*, 147 Ill. 370;) nor is influence secured through kindness or care undue influence; (*Dickerhoof* v. *Wood*, 267 Ill. 50;) nor is the influence of affection, even if coupled with persuasion, undue influence unless the testator is deprived of free agency. (*Blackhurst* v. *James*, 304 Ill. 586.) It is not sufficient to aver undue influence as a conclusion. Facts must be stated warranting the conclusion and go to the extent of showing that thereby the testator was deprived of his free agency. That the will was executed in the home of the testator and his wife, in the absence of all other heirs-at-law of the testator, is not a basis for the inference of undue influence.

It is charged in the bill that the will was not executed as the statute requires. This averment was admitted by demurrer. It states specifically the omission of facts necessary to render the will effective. Section 2 of the act in regard to wills requires that they shall be reduced to writing and signed by the testator and attested in the presence of the testator by two or more credible witnesses, two of whom must declare on oath or affirmation before the county court that they were present and saw the testator sign the will or acknowledged the same to be his act and deed, and that they believed the testator to be of sound mind and memory at the time of signing or acknowledging the same. Section 7 provides that in trials of will contests the oath of the subscribing witnesses taken and certified at the time of the first probate shall be admitted as evidence and accorded such weight as the jury shall think it may deserve. Com-

plainants are entitled to a trial on that issue, and the demurrer was improperly sustained as to the averments on the execution of the will. *Grosh* v. *Acom,* 325 Ill. 474.

The facts stated in the bill and admitted by demurrer do not constitute an implied revocation of the will. The facts relied upon to constitute it are those showing the changed condition attending the lives of the testator and his wife as to his estate, his family and his obligations to his wife and all his other heirs-at-law, and that as a consequence the will was revoked by operation of law. With commendable frankness counsel admit there is no decision of this court supporting the contention. In the argument no decision of this or of any court is applied in support of the contention. It is said the doctrine of implied revocation is founded upon a presumption of law that the will does not express the final intention of the testator. But granting that he was possessed of sufficient mental capacity to make a will, he must have intended the disposition he made. The changed condition of his estate was known by him. His accumulated property was his, to dispose of as he saw fit. No statute, no law, supports the contention that he was under obligation to provide for his heirs out of the accumulation of his estate. The fact that he was in robust health may have caused him to delay making a change in his will, but he was under no legal obligation to do so. It is quite as fair and reasonable, from the affectionate relations between the parties, that he desired his property to pass as the law directs in the event of her death. The law is concerned with legal—not moral—rights and obligations. The former are made and controlled by legal sanctions; the latter by the custom of the time and the place. They may ripen into legal rights when legislatures see fit to apply them in the public interest. Until then they have no better or other sanction or control than that afforded by public opinion.

It is further suggested as a reason for declaring an implied revocation to be applicable, that some time before the testator's death he expected his wife to live several years and that later he came to the conclusion that she might speedily die. Being the sole devisee and no remainder over provided for, it is as reasonable, under those circumstances, to assume that he deemed revocation unnecessary. After all, the legislature has not deemed it expedient to declare implied revocations applicable to wills under the circumstances of this case. The courts are powerless to make the rule if it were deemed proper or necessary. Section 17 of the Wills act relates to the method of revoking wills. It provides that "no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." Section 10 of the Statute of Descent is: "If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not on that account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given, shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate, and a marriage shall be deemed a revocation of a prior will." In *Ford* v. *Greenawalt*, 292 Ill. 121, this court had under consideration the question of implied revocation of wills. It was there held that a revocation is the annulment or cancellation of an instrument, act or promise by or on behalf of the party who made it, and as applied to wills it is an act of the mind manifested by some act done by the testator recalling his will. Here the testator did nothing, and if the argument of appellant is sound he had no intention of revoking his will. The manifest affection for his wife in her invalid condition is a denial of such intention, and his death raises no implied revocation.

For the error in sustaining the demurrer to the bill as to the averment of the execution of the will the decree of the circuit court is reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*