(No. 12999.—Reversed and remanded.)

John A. Ford, Appellant, *vs.* Bert Greenawalt, Admr. *et al.* Appellees.

*Opinion filed February 18, 1920—Rehearing denied April 8, 1920.*

1. Wills—*rule at common law as to revocation of will by subsequent marriage.* At common law a will was revoked by birth of issue from a marriage entered into after the execution of the will, but as the revocation was implied from the presumed intention of the testator arising from the creation of new moral obligations, the presumption was overcome if the will made provision for the wife and child.

2. Same—*what is a revocation.* A revocation is the annulment or cancellation of an instrument, act or promise by or in behalf of the party who made it, and as applied to wills it is an act of the mind manifested by some act done by the testator recalling his will.

3. Same—*marriage does not revoke prior will which makes provision for new relation.* The provision of section 10 of the Statute of Descent that a marriage shall be deemed a revocation of a prior will does not operate to revoke a will which expressly provides for the new relation and makes provision for the intended wife.

Dunn, C. J., and Farmer, J., dissenting.

Appeal from the Circuit Court of Kendall county; the Hon. Mazzini Slusser, Judge, presiding.

N. J. Aldrich, O. A. Burkhart, and J. C. Murphy, for appellant.

John M. Raymond, and John K. Newhall, for appellees.

Mr. Justice Cartwright delivered the opinion of the court:

On August 27, 1898, William L. Ford, of Kendall county, made his last will and testament, and shortly afterward, on September 24, 1898, married Ruth Inscho. They lived together as husband and wife for twenty years, until December 22, 1918, when he died, and ten days later, on January 1, 1919, the widow, Ruth Inscho Ford, died.

The will was offered for probate in the county court of Kendall county, and Bert Greenawalt, administrator of the estate of Ruth Inscho Ford, objected to the probate of the will on the ground that by the marriage the will was revoked. The county court sustained the objection and denied probate of the will. John A. Ford, in his own right and as executor of the will, appealed to the circuit court of Kendall county, and in that court Ida Ford Hallock, a daughter of William L. Ford, filed the same objection as the administrator. The objections were sustained and probate of the will was again refused. From that order this appeal was prosecuted.

The requisite proof of the due execution of the will and the competency of the testator was made, and the only question to be determined is whether the will was revoked by his subsequent marriage.

When the will was made William L. Ford was a widower, fifty-nine years of age, with two adult children, and Ruth Inscho was a widow, fifty-seven years of age, with five adult children. She was his housekeeper and sister of his deceased wife and they entered into a marriage engagement. The will provided that in case the contemplated marriage of the testator with Ruth Inscho should take place and she should survive him, she should have a legacy of $200 and an annuity of $200 per annum so long as she should remain his widow. The legacy and annuity were made a charge upon his farm, which was devised to his son, John A. Ford, as trustee, to pay the annuity, and the provisions made for the benefit of the widow were to be taken in lieu of dower.

By the common law, marriage and the birth of issue together revoked a previous will on account of a presumed intention of the testator arising from the change of circumstances creating new duties and obligations arising out of the new relation. (1 Jarman on Wills, 272; 4 Kent's Com. 521.) The revocation was dependent upon the con-

currence of marriage and the birth of a child, and therefore did not take place at the marriage but at the birth of issue, and, being implied from the presumed intention of the testator arising from the creation of new moral duties and obligations ordinarily affecting human conduct, the presumption was overcome if the will made provisions for the wife and child. (40 Cyc. 1199; 4 Kent's Com. 522.) As an addition to the rule of the common law, this court held in several cases that the marriage of a testator revoked his prior will, on the ground that in this State the husband and wife are heirs of each other when there is no child or descendant. The law under such conditions was first stated in *Tyler* v. *Tyler*, 19 Ill. 151, as follows: "We hold that marriage under our statute making the wife heir to the husband and the husband heir to the wife where there is no child or descendant of a child, is, in the absence of facts showing an intention to die testate arising subsequent to the marriage, a revocation of a will of the husband, made prior to the marriage, disposing of his entire estate without making provision in contemplation of the relations arising out of it." The rule of law was repeated in *American Board of Commissioners for Foreign Missions* v. *Nelson*, 72 Ill. 564, where Arba Nelson made a will containing no provision for his widow in case he should contract a marriage, and in *Duryea* v. *Duryea*, 85 Ill. 41, the court said that the former decisions must be regarded as the settled law of this State. In the case of *In re Tuller*, 79 Ill. 99, the rule that a subsequent marriage revoked a will was expressly limited to cases where there was no issue of the marriage, so that the surviving spouse became an heir, and under the law so stated a revocation could not take place at the time of the marriage but only at the death of the testator without issue of the marriage.

Under the law prior to the act of 1872 marriage and the birth of issue constituted an implied revocation of a will which made no provision for the changed condition, and

that was so in case of a subsequent marriage where there was no issue, as in this case, and the widow become an heir at the death of the testator. In either case the implied revocation was founded upon the presumption of an alteration of the testator's intention arising from circumstances after the making of the will, producing a change in his natural obligations and duties. The statute providing for the disposition of property by will, which prescribed the method of execution and revocation, provided that no will, testament or codicil should be revoked other than by the various methods therein mentioned, and the Revised Statutes of 1845 provided for abating devises and legacies for the purpose of raising a portion for a child or children born after the making of a will and not provided for in the will. Notwithstanding the provision of the Statute of Wills prohibiting the revocation of a will except by one of the methods therein prescribed, the common law rule that a will, or part of it, may be revoked by implication by acts of the testator inconsistent therewith remained the law. *Phillippe* v. *Clevenger,* 239 Ill. 117.

This being the state of the law, and an implied revocation by the testator resting upon his presumed intention in the absence of any provision for the changed condition, the General Assembly in 1872 transferred the provision for raising a portion for a child or children born after the making of a will and not provided for in the will, as in case of intestacy, to the chapter providing rules for the descent and distribution of intestate estates with this provision added, "and a marriage shall be deemed a revocation of a prior will." Since that change in the statute there has been no case considered where there was a subsequent marriage and the will showed upon its face that it was to remain the will of the testator under the changed condition by making specific provision therefor. Perhaps the nearest approach to it is *Crum* v. *Sawyer,* 132 Ill. 443, where Frances D. Eads, a widow, made a will on March 21, 1877,

and on May 27, 1879, shortly before her marriage to John W. Crum, executed a codicil, in which, among other legacies, she gave one to a son of Crum by a former marriage. There was no reference to the contemplated marriage nor any provision for the husband, and it was expressly conceded that the marriage revoked the will. The right claimed by Crum, who survived his wife, was based on a contract between them made on June 24, 1886, and the controversy was solely between the surviving husband and those who would have been heirs of Frances D. Eads Crum if there had been no surviving husband. In *McAnnulty* v. *McAnnulty*, 120 Ill. 26, a widower made his will and more than a year afterward married, and it was held that the marriage revoked the will and the verbal ante-nuptial agreement was obnoxious to the Statute of Frauds.

The question now to be considered is whether the General Assembly intended that a testator should be conclusively presumed to have revoked his will and that it no longer expressed his intention when by the terms of the will itself a contrary intention appears and provision is made for the changed condition. To revoke is to recall, cancel or set aside, and a revocation can only be by the grantor, licensor or maker of an instrument granting a right or privilege. A revocation is the annulment or cancellation of an instrument, act or promise by or on behalf of the party who made it. (Standard Dict.) It is the act of revoking by one having the right, as the revocation of an edict, a power, a will or a license. (Webster's Dict.) As applied to wills it is an act of the mind manifested by some act done by the testator which recalls his will. (34 Cyc. 1724.) The statute declares that a subsequent marriage shall be deemed a revocation of a will, which means that the act of the testator in entering into the new relation shall be considered and regarded as a recalling, canceling or setting aside of his will; and this provision is a part of the same section which provides for raising a portion for a child or

children not provided for in the will and regarding that portion as intestate estate passing by descent. It is not improbable that the General Assembly had in mind the same condition of a lack of provision for the changed condition arising from a subsequent marriage and intended only to change the existing law by eliminating the condition that there should be no issue of the marriage. The provision is materially different from the English statute (1 Vict. chap. 26, sec. 18,) providing that every will made by a man or woman shall be revoked by his or her marriage except a will made in exercise of a power of appointment, when the estate thereby appointed would not, in default of such appointment, pass to his or her heir, personal representative or next of kin. The English statute was adopted in Kentucky and considered in *Stewart* v. *Mulholland,* 10 Ky. 824, where the court decided that a subsequent marriage did not revoke the will of the wife where in the will she had provided for her marriage, but the decision was mainly on the ground that an ante-nuptial contract, the will and the marriage, although executed on different days, were simultaneous transactions. The statute there did not provide that a marriage should be regarded or considered a revocation of a will, but declared that the will should be revoked by marriage, leaving no ground whatever for rebutting a presumption contrary to the revocation. The will of William L. Ford shows by its terms that it was not intended to be revoked by his marriage but was to remain his will after the contemplated marriage should take place. It was his will to the day of his death, and so far as he was concerned it was never revoked or intended to be revoked. It would seem an unreasonable construction of the statute to ascribe to the General Assembly an intention to declare that a revocation by the testator takes place where he provides in the will for the new relation and plainly intends that the instrument shall continue to be his will after the marriage.

The judgments of the circuit court and county court are reversed and the cause is remanded to the county court, with directions to admit the will to probate.

*Reversed and remanded, with directions.*

DUNN, C. J., and FARMER, J., dissenting.