(No. 13577.—Reversed and remanded.)

J. W. WOOD, Appellee, *vs.* BESSIE PITMAN CORBIN, Appellant.

*Opinion filed December 21, 1920—Rehearing denied Feb. 4, 1921.*

WILLS—*subsequent marriage revokes will unless its provisions are on expressed condition of marriage—evidence.* A subsequent marriage is a revocation of a will unless the will provides on its face for a future marriage and makes provision for the wife conditioned upon such marriage taking place, and on application for probate of a will made two days before marriage but which makes no express provision for future marriage, evidence that the testator was engaged to be married to the legatee, who became his wife, and that there was an understanding in regard to the will, is incompetent. (*Ford* v. *Greenawalt,* 292 Ill. 121, distinguished.)

APPEAL from the Circuit Court of Knox county; the Hon. R. J. GRIER, Judge, presiding.

HARDY & HARDY, for appellant.

MARSH & RICE, (CHARLES L. OGDEN, guardian *ad litem,*) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

J. W. Wood, to whom a legacy of $10,000 was given by the will of Charles M. Corbin, executed on July 27, 1918, filed a petition for the probate of the will on March 22, 1920, in the county court of Knox county. On a hearing the county court denied probate of the will on the ground that it had been revoked by the subsequent marriage of the

testator, and the petitioner appealed to the circuit court, where the will was admitted to probate, and Bessie Pitman Corbin, the widow of the testator, has appealed from that order.

No objection was made to the sufficiency of the evidence of the execution of the will and the competency of the testator and only the question of revocation is presented. The testator, who was a widower fifty-four years old, without children, married the appellant on July 29, 1918, two days after the execution of the will, and died on September 28, 1918. The appellant was a widow, forty-five years old. She and the testator's brother, William T. Corbin, were his only heirs. His will devised a farm of 160 acres in Knox county to his brother, and to Bessie Pitman Johnson, whom he afterward married, one hundred shares of stock in the Knox County State Bank, worth $217 a share, and all the household furniture and personal effects in the testator's home in Yates City, worth about $800, together with a life estate in the homestead, worth about $4000. The remainder in the homestead was devised to the Methodist Church of Yates City. Fourteen legacies, varying in amount from $500 to $10,000, aggregating $24,500, were given by the will. The executor was directed to sell the testator's lands in Canada, and the proceeds, together with the residue of the estate, were given to his brother, William T. Corbin. A. J. Lawrence was named executor without bond and was authorized to make conveyances of the land in Canada.

The testator had been married before his marriage to the appellant and his first wife died in 1910. For several years before her death the appellant had taken care of her and nursed her and was in the home with her and her husband. After the first wife's death the appellant continued to live in the home of the testator as his house-keeper, her mother living there with her. The testator was in failing health and had been for a year or more before

the summer of 1918. He wanted to go to Canada to attend to his farming business there, and the appellant agreed to go with him as his wife and was making preparations for the journey for a week or two before the marriage. Two or three days before that event he told her his physician said he would have to go to Rochester, Minnesota, to see the Mayo Brothers before going to Canada. Therefore they arranged to go to Rochester first, and on July 29 went to Galesburg, were married there and went on to Rochester. They did not go to Canada, but after being in Rochester two or three weeks returned home.

Some evidence was introduced by the proponent of the will tending to show that the appellant was acquainted with the fact of the execution of the will by the testator on the day it was executed and knew its contents, and that it was executed in accordance with an understanding between her and the testator that he would so provide for her in his will. This evidence consisted of statements of alleged conversations between her and the testator's brother after the testator's death, testified to by the brother and denied by her.

Section 10 of chapter 39 of the Revised Statutes provides that a marriage shall be deemed a revocation of a prior will, and the question is whether the marriage of the testator two days after making the will revoked it. This provision of the statute was considered by the court in the case of *Ford* v. *Greenawalt,* 292 Ill. 121, and in the opinion in that case will be found a statement of the common law on the subject of the revocation of a will by a subsequent marriage, and a review of the decisions of this court, both before and after the enactment of the statute of 1872, that a marriage shall be deemed a revocation of a prior will. The construction given to the statute was that it was not intended to apply to a case where the will showed upon its face that it was to remain the will of the testator under the changed condition by making specific provi-

sion for the new relation. We are now asked to extend this construction of the statute to a case in which no mention of the intended marriage is made in the will and there is no indication in it of any intention that it shall continue to be the testator's will after his marriage.

Evidence in regard to the engagement of the testator and the appellant and the supposed understanding in regard to the will was incompetent. The gifts to the appellant in the will were absolute,—not conditional on marriage. Perhaps they were made because of the engagement, though that is not certain, for there is evidence that the testator had promised in his first wife's lifetime, and at her request, to provide for the appellant, and in view of his condition in life, his means and those having claims upon his bounty, the provision made for her in the will was not extravagant if made in fulfillment of that promise. Even if the gifts were made because of the engagement, the marriage created a different relation. The gifts were not conditional on the marriage, as in the *Ford case.* Whether the appellant married the testator or not, the provisions of his will for her would not be affected. If he should die before the marriage she would receive the benefit of the will. If he should die after the marriage, the interest which the law gave her in his estate would provide for her. It is mere conjecture to guess at what the intention of the testator may have been after the marriage. The statute has declared that a marriage shall be deemed a revocation of a will, and it must have that effect except in the case of a will which provides on its face for a future marriage and makes provision for the wife conditioned upon such marriage taking place.

The order of the circuit court is reversed and the cause is remanded, with directions to enter an order denying the probate of the will.

*Reversed and remanded, with directions.*