(No. 14026.—Reversed and remanded.)
CHARLES F. GILLMANN, Appellee, *vs.* MARION G. DRESS-
LER *et al.* Appellants.

*Opinion filed October 22, 1921—Rehearing denied Dec. 9, 1921.*

WILLS—*when marriage of testator revokes his will.* Under·
section 10 of the Statute of Descent marriage of a testator is a rev-
ocation of his will, and the fact that a will made during bachelor-
hood provides for the testator's wife and children in case he should
marry and leave a wife and children at his death does not change
the rule. (*Ford* v. *Greenawalt,* 292 Ill. 121, distinguished.)

CARTWRIGHT and THOMPSON, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the
Hon. THOMAS G. WINDES, Judge, presiding.

D'ANCONA & PFLAUM, for appellants.

McGOORTY, SILBER, ISAACS & WOLEY, (JOHN P. Mc-
GOORTY, of counsel,) for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

This is an appeal from an order of the circuit court of
Cook county receiving in probate the purported last will and
testament of Hugo J. Gillmann, deceased. On May 24,
1920, Charles F. Gillmann, named as legatee and executor
of said will, filed his petition in the probate court of Cook
county for probate of the will, and on October 2, 1920, the
probate court admitted the will to probate. From this order
an appeal was taken to the circuit court of Cook county,
where a like order was entered.

The sole contention of appellants is, that this will, which
was made by Hugo J. Gillmann while a bachelor, was re-
voked by his marriage to Marion Woodman, (now Marion
G. Dressler,) one of the appellants.

The will, after making certain devises and bequests to
the testator's mother and other members of his family, pro-
vides as follows:

"*Fourth*—In the event of my being married at the time of my death, leaving no offspring, then my estate is to be divided as follows: One-third to be paid to my widow, the balance, two-thirds of my estate, to be divided as provided for in article first of this will, namely, equally between my mother, Antoinette Gillmann, my sister, Helen Fannie Gillmann, and my step-father, Charles F. Gillmann.

"*Fifth*—In the event of my being the father of children born or begotten by me, my wife is to receive the interest on one-third of my estate, which is to be held in trust by my step-father, Charles F. Gillmann, he furnishing a bond for the amount of such trust; one-third of my estate to be held in trust by the said Charles F. Gillmann, or his executor, for my child or children until they have reached the age of twenty-one years, then the principal is to be paid to them, the interest on said amount to be paid quarterly; and the third one-third of my estate be divided as in article first, between my mother, Antoinette Gillmann, my sister, Helen Fannie Gillmann, and my step-father, Charles F. Gillmann.

"*Sixth*—If my wife re-marries, the interest of the one-third of my estate which was to be paid to her as provided for in article five is to be paid to my child or children for their support and education, and the principal to be paid to them, with the other one-third, as provided for in said article five.

"*Seventh*—Should my wife remain unmarried and my child or children die before my estate is distributed, after paying all their lawful debts my estate is to be divided as provided for in article first or second."

Section 10 of chapter 39 of our statutes provides that marriage shall be deemed a revocation of a prior will. Appellee's contention is that this case falls within the rule laid down in *Ford* v. *Greenawalt*, 292 Ill. 121, where it was held that as to that particular case the legislature did not intend that in such a situation the marriage should be deemed a revocation of the will. The will in the *Ford case*

provided as follows: "In case I intermarry with Ruth Inscho, sister of my deceased wife, as I now contemplate doing, and she survive me, I bequeath to her," etc. It will be noted that in that case the will of Ford showed by its terms that it was not intended to be revoked by his marriage to Ruth Inscho; that the devise and bequest to Ruth Inscho was a devise and bequest to a particular person, (naming her,) conditioned on the testator's marrying her. It was not an attempt to provide for some woman not yet ascertained, in the event of the testator's marriage with her, but in that case if Ford married Ruth Inscho, as he contemplated doing, she was to receive the estate; if he did not marry her but married someone else, then Ruth Inscho would take nothing, not only by the statute, which would revoke the entire will under such circumstances, but by the terms of the will itself. That case is clearly distinguishable from the case at bar. In the instant case the evidence showed that Gillmann did not marry for a period of nearly three and one-half years after making the will, and there is nothing in the will to indicate that he had in mind marriage with Marion Woodman at the time the will was made. It is not a devise to her conditioned upon such marriage or a statement that he contemplated marrying her, but it is a general provision that in case he should marry, the person who should then be his wife was to receive certain devises or bequests. This clearly does not come within the rule laid down in *Ford* v. *Greenawalt, supra.* The construction of the statute given in the *Ford case* is, that the legislature did not intend that the act should apply to a case where the will showed upon its face that it was to remain the will of the testator under the changed conditions by reason of the devise to a particular person conditioned upon the marriage to such person. To hold that such a rule should apply to a case where a devise is made simply upon the happening of an event which the will does not show to have been considered as certain to happen but which is viewed merely as one of the possibilities of his life, would

3c0—12

be to extend the rule beyond that laid down in the *Greenawalt case* and to nullify section 10 of chapter 39 of our statutes. The reasons for the decision in that case are set forth therein, and it is clear that the present case does not come within such reasoning. As was held by this court in *Wood* v. *Corbin,* 296 Ill. 129, the rule should not be extended to those cases clearly coming within the intention of the legislature requiring the revocation of the will. We are of the opinion that the will in the instant case was revoked by the marriage of the testator.

The order of the circuit court admitting the will to probate is therefore reversed and the cause remanded to that court, with directions to enter an order denying probate of the will. *Reversed and remanded, with directions.*

Mr. JUSTICE CARTWRIGHT, dissenting:

A revocation is the annulment, cancellation or recalling of an instrument, act or promise by or on behalf of the party who made it, and as applied to wills it is an act of the mind of the testator manifested by something done by him which recalls his will. The Statute of Wills, purporting to cover the entire subject of the execution, probate, effect and contest of wills, contains the following section: "No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." This is a clear declaration that a testator shall not revoke his will except in one of the methods therein specified, and in the absence of such revocation it shall remain his will.

Another entirely independent act, upon a different sub-ject, controlling the descent of intestate estates, contains this section: "If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not on that account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given, shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate, and a marriage shall be deemed a revo-cation of a prior will." In regard to a child born to any testator after making his last will and testament the section provides that unless the intention of the testator appears from the will to have been to disinherit the child the de-vises and legacies are to be abated to raise a portion for the child, and that a marriage shall be deemed a revocation of a prior will.

These several statutes were considered in *Ford* v. *Green-awalt,* 292 Ill. 121, and the provision of the Statute of De-scent was interpreted as meaning that a subsequent marriage should not be treated as a revocation of a will if the will showed a contrary intention and made provision for the changed condition. It was said that it would be an un-reasonable construction of the statute to ascribe to the Gen-eral Assembly an intention to declare that a revocation by the testator takes place where he provides for the new re-lation and plainly intends that the instrument shall continue to be his will after the marriage. That rule of construction was recognized as correct in *Wood* v. *Corbin,* 296 Ill. 129, but in that case there was no provision for a change of cir-cumstances creating new duties or obligations arising out of the marriage.

In the opinion adopted in this case it is said that the principles stated in *Ford* v. *Greenawalt* have no application

unless the name of the intended wife was given and she is identified, which is not a distinction based on any principle. Hugo J. Gillmann, a bachelor, provided in his will for the disposition of his estate in case of his marriage, and therein made provision for his widow and for any children that might be born to him. He married Marion Woodman and lived with her as his wife for seven years, and during all that time he regarded the will as valid and effectual and not revoked and intended that it should take effect at his death as his last will and testament. The distinction drawn by the opinion appears to me to be unsubstantial and affording no sufficient ground for reversing the order of the circuit court.

Mr. JUSTICE THOMPSON, dissenting:

This case is not distinguishable, in principle, from *Ford v. Greenawalt,* 292 Ill. 121, and that case ought to be followed or overruled.