Argued May 11; affirmed June 8; rehearing denied July 7, 1948

In re Shepherd's Estate
SHEPHERD, *Administrator v.* GRAVES

194 P. (2d) 425

*Ralph M. Holman,* of Oregon City, argued the cause for appellant. On the brief were Butler, Jack, Beckett & Holman, of Oregon City.

*W. Douglas Harris,* of Mt. Angel, argued the cause for respondent. With him on the brief was John H. Carson, of Salem.

Before Rossman, Chief Justice, and Belt, Kelly, Bailey and Brand, Justices.

**KELLY, J.**

This is a proceeding brought to revoke letters of administration theretofore issued to Andrew Shepherd the surviving husband of Ada B. Shepherd, deceased; to secure an order admitting to probate the purported last will and testament of said deceased, and to procure the issuance of letters testamentary to Birdie Graves a sister of said deceased. From an order and decree that said Ada B. Shepherd died intestate; that said purported last will and testament was revoked by decedent on the 3rd day of September, 1919; that this proceeding be dismissed and that the appointment of Andrew Shepherd, as administrator of the estate of said Ada B. Shepherd, deceased, be confirmed, said Birdie Graves has appealed.

The controlling question presented here is whether a will executed by said deceased on the 20th day of August, 1919, was revoked by the marriage of said deceased to said Andrew Shepherd on the 3rd day of September, 1919.

The statute provides that

"A will made by any person shall be deemed revoked by his or her subsequent marriage." Section 18-301, O. C. L. A., Vol. 2, p. 527.

It is contended by the proponent of said will, who is the appellant, that it was not the intention of the legis-

lature that a will providing for the contingency of marriage would be revoked by a subsequent marriage.

The will tendered for probate in this proceeding contained the following provision:

"In the event of my marriage again before my death, I give and bequeathe to said husband the land, that is to say, the one-half portion of said 60 acres now owned by me and located in Marion County, Oregon, on which the dwelling is now located."

No particular person is named in said will as decedent's intended husband. While it is true that two weeks after the execution of said will, the testatrix married Andrew Shepherd, it cannot be said that there was an express provision in said will that in the event the testatrix should marry Andrew Shepherd, then in that case one-half of said 60 acres of land would be devised to him.

In support of appellant's contention, as above stated, she cites the above quoted section of the statute and three cases, viz: *Brush v. Wilkins,* 4 N. Y. Chan. Rep. 506; *Ford v. Greenawalt,* 292 Ill. 121, 126 N. E. 555 and *Gillmann v. Dressler,* 300 Ill. 175, 133 N. E. 180.

*Brush v. Wilkins,* supra, is not based upon any statute, but upon a construction and application of the "English law as settled at the time of our revolution, or by those general principles of reason and justice, which have a uniform and universal application."

The case of *Ford v. Greenawalt,* supra, is one wherein the will in suit provided that in case the contemplated marriage of the testator with Ruth Inscho should take place and she should survive him, she should have a legacy of $200 and an annuity of $200 per annum so long as she should remain his widow. "The legacy and annuity was made a charge upon his farm, which was

devised to his son, John A. Ford, to pay the annuity, and the provisions made for the benefit of the widow were to be taken in lieu of dower.''

The distinction between *Ford v. Greenawalt* and the case at bar is that in the case at bar no one is named as an intended spouse of the testatrix while in the Ford-Greenawalt case, as stated, Ruth Inscho was named and designated as the intended bride of the testator in a contemplated marriage.

The later case of *Gillmann v. Dressler,* supra, is very similar to the case at bar, the only distinction being that in the case at bar the testatrix married Andrew Shepherd after the lapse of two weeks from the time the will in suit was executed, while in the Gillmann-Dressler case a period of nearly three and one-half years elapsed after the execution of Gillmann's will before he married Marian Woodman.

In both cases, that is the case at bar and the Gillmann-Dressler case, there was no devise to the person who later became the spouse of decedent; there was no statement that the decedent contemplated marriage with that person, but only a general provision that in case of a subsequent marriage on decedent's part, the other contracting party, who would then be the spouse of decedent, was to receive certain devises or bequests.

We quote from the prevailing opinion in *Gillmann v. Dressler,* supra:

"The construction of the statute given in the Ford case is, that the legislature did not intend that the act should apply to a case where the will showed upon its face that it was to remain the will of the testator under the changed conditions by reason of the devise to a praticular person conditioned upon the marriage of such person. To hold that such a

rule should apply to a case where a devise is made simply upon the happening of an event which the will does not show to have been considered as certain to happen but which is viewed merely as one of the possibilities of his life, would be to extend the rule beyond that laid down in the Greenawalt case and to nullify section 10 of chapter 39 of our statutes. The reasons for the decision in that case are set forth therein, and it is clear that the present case does not come within such reasoning. As was held by the court in Wood v. Corbin, 296 Ill. 129, the rule should not be extended to those cases clearly coming within the intention of the legislature requiring the revocation of the will." *Gillmann v. Dressler,* supra.

Section 10 of Chapter 39 of the Illinois statutes provided "that marriage shall be deemed a revocation of a prior will." *Gillmann v. Dressler,* Ibid, at page 176.

Appellant also invokes the principle that where possible, the court should carry out and be controlled by the expressed intention of the testatrix.

In support of that principle appellant cites: *Wheeler v. Wheeler,* 1 R. I. 364; *Miller v. Phillips,* 9 R. I. 141; *Stewart v. Mulholland,* 88 Ky. 38, 10 S. W. 125, and *Succession of Carbajal,* 154 La. 1060, 98 So. 666.

In *Wheeler v. Wheeler,* supra, the supreme court of Rhode Island gave consideration to the statute providing that—

"no devise, etc. shall be revocable otherwise than by marriage of the testator subsequent to the date thereof, or by some other will and codicil in writing, or other writing declaring the same, or by burning, cancelling, etc." Ibid pp. 372, 373.

In the Wheeler case, the facts and circumstances that impelled the court to hold that Wheeler intended

that his will should stand notwithstanding his marriage, are set forth in the opinion thus:

"First. The testator at the time he made his will, had children by a former marriage, to whom he gave his estate by his will.

Second. The deed of trust executed by the testator and the deed of trust executed by the intended wife, both recite that a marriage was about to be had between the parties. He conveys all his real estate, and she releases all right of dower which she might have thereto. She conveys her real and personal estate, and he releases all claims which he might have thereto by virtue of the marriage.

\* \* \*

This was on the 13th of April, (1849). The trustee of the testator's estate was to convey it to such purposes as he should by his last will appoint. On the same day the testator executed the present will, and destroyed an old one, the same in part.

On the 15th day of April, 1849, the marriage took place." Ibid, p. 375.

As we understand the doctrine of *Miller v. Phillips,* supra, it is to the effect that revocation of a will by marriage under the Rhode Island statute is not absolute but presumptive only, and that in a trial by jury to determine whether the presumption of revocation by marriage should prevail or not, parol evidence that subsequent to her marriage the testator spoke of her will was properly received. That question was not presented in the case at bar.

In the case of *Stewart v. Mulholland,* supra, there was an antenuptial contract. We quote from the opinion:

"The will was executed by the intended wife in pursuance of the antenuptial contract. It was made and published, by the consent of the husband, he having, by the marriage contract, relinquished all interest in her estate." Ibid, p. 47.

In re *Succession of Carbajal,* supra, the supreme court of Louisiana held that Article 1705 of the Revised Code of that state providing that a testament falls by the birth of a legitimate child has no application to a will making full provision for a child of testator born after the testator's death.

We quote from the opinion:

> "In the present case, the testator knew of the pregnancy of his wife, and after donating to her his movable property, together with the usufruct of immovables, declared that his unborn child should share equally with the others in the remainder of his estate, the most natural and reasonable thing that could have been done." Ibid, p. 668.

In the cases cited by appellant, we find no support for holding that a devise dependent upon an event not shown by the will to have been certain to happen would nullify the provisions of Section 18-301, O. C. L. A.

■ We have reviewed them in order that appellant may know that they have received our careful and analytical consideration; but not for the purpose or with the intention of approving any other or different construction of the provisions of Section 18-301, O. C. L. A., than this court has heretofore announced. In the cases heretofore decided by this court, wherein said Section 18-301, supra, was construed, this court has held that its mandate of revocation by subsequent marriage is absolute and not merely presumptive.

In construing Sections 70-108 and 70-205, O. C. L. A., this court has said:

> "It is true that the word (deemed) usually implies a conclusive presumption or an adjudication, but it may connote a disputable one." *Erickson v. Erickson,* 167 Or. 1, 16, 115 P. (2d) 172.

As applied to the use of the word "deemed" in Sections 4 and 5 of Article II of the Oregon Constitution, this court has said that the word "deemed" should not be used as creating a conclusive, but only a disputable presumption. *Zimmerman v. Zimmerman,* 175 Or. 585, 603, 155 P. (2d) 293. Neither the Erickson nor the Zimmerman case dealt with or was affected by the provisions of Section 18-301, supra.

In an opinion by Judge Deady, the United States Circuit Court for the Ninth Circuit stated that—

"The word 'deemed' is the equivalent of 'considered' or 'judged:' and, therefore, whatever an act of congress requires to be 'deemed' or 'taken' as true of any person or thing, must, in law, be considered as having been duly adjudged or established concerning such person or thing, and have force and effect accordingly." *Leonard v. Grant,* 5 Fed. Rep. 11, 16.

In an early New York case, the supreme court of New York construed a statutory provision similar to Section 18-301, O. C. L. A. We quote from the opinion in that case:

"The statute is plain and peremptory. Such a will 'shall be deemed revoked.' The appellants urge, that as the expression is not 'revoked,' but 'deemed to be revoked,' it should be construed to mean only a presumptive revocation, open to explanation. We think not. The language is accurate. *Revocation* is an act done by the *party,* by which he recalls his will. The statute, therefore, with propriety says, not that the marriage revokes, but that it is to be deemed, or considered the same as, a revocation. It is not a revocation, but it has the effect of a revocation. The statute does not say that marriage shall be deemed a presumptive revocation, but, positively, it shall be deemed a revocation. The language is positive.

And it is well to have a definite rule on such a point, and not to leave the matter open to the *guesses* of courts, whether, in each particular case, the person intended, or did not intend, to leave her will in force." *Lathrop v. Dunlap,* 11 N. Y. Sup. Ct. Rep. 313 (4 Hun.) 213, 215, 216.

This court in the case of *Booth's Will,* 40 Or. 154, 61 P. 1135, 66 P. 710, gave consideration to the question now before us. There a statement by Mr. Justice Andrews in *Brown v. Clark,* 77 N. Y. 369 is quoted, a part of which is as follows:

"The language of the statute, that the will of an unmarried woman shall be deemed revoked by her subsequent marriage, is the declaration of an absolute rule. The statute does not make the marriage a presumptive revocation, which may be rebutted by proof of a contrary intention, but makes it operate *eo instanti* as a revocation."

The penultimate sentence in the opinion of this court in the case of *Booth's Will,* supra, is as follows:

"We have no alternative but to enforce the law as we find it upon the statute books, and to hold that the will of an unmarried woman is revoked by her subsequent marriage."

In *Bagley v. Bagley,* 110 Or. 368, at p. 372, 222 P. 722, at p. 723, the following statement is made:

"The subsequent marriage of the testator abrogated the will he had executed and delivered to the plaintiff, for Oregon Laws, Section 10098, reads thus: 'A will made by an unmarried person shall be deemed revoked by his or her subsequent marriage.' "

■ We adhere strictly to the construction of Section 18-301, O. C. L. A., given in the above cited Oregon cases.

The order and decree of the circuit court is affirmed.