Argued May 2; affirmed July 6, costs retaxed September 13, 1949

IN RE ESTATE OF MADGE MASSEY
BRANCHFLOWER ET AL. *v.* MASSEY

208 P. 2d 341

*John F. Kilkenny* argued the cause for contestants and appellants. On the brief were Raley, Kilkenny & Raley, of Pendleton.

*W. C. Perry* argued the cause for proponent and respondent. On the brief were Randall, Perry & Wells, of Pendleton.

Before Lusk, Chief Justice, and Brand, Rossman and Bailey, Justices.

BAILEY, J.

Madge C. Massey died on the 26th day of May, 1947, at the age of 57 years. At the time of her death she was a resident of Pendleton, Oregon, and left an estate in Umatilla County, Oregon, consisting of personal property of the aproximate value of $5,000. Thereafter, and on the 31st day of May, 1947, letters of administration were issued in the county court of Umatilla County, Oregon, to Grace C. Branchflower. Madge C. Massey left surviving her, as her only heirs at law, four sisters, one of whom, and the only resident of Oregon, was Grace C. Branchflower.

Harley Myrl Massey, hereinafter referred to as the proponent, on the 14th day of July, 1947, filed in the pending probate proceedings in the county court for Umatilla County, wherein Grace C. Branchflower had been appointed administratrix, a petition in which he set forth the facts hereinbefore stated, and further alleged that the said deceased left a will bearing date of November 18, 1935, which the petitioner alleged was the last will and testament of said deceased, a copy of

which said will is attached to and marked as an exhibit and made a part of the petition. The petition further alleged that the deceased died, leaving no husband or children surviving her. In said will the testatrix, after ordering that all of her debts be paid, provided as follows:

"Second: I give, devise and bequeath unto Harley Myrl Massey, of Pendleton, Oregon, my present husband, and from whom I am now being divorced, all of my property real, personal or mixed wheresoever found and wheresoever situated, and without regard to whether we are married or divorced at the time of my death."

The testatrix nominated Harley M. Massey to be executor of her will and authorized and empowered him to sell and dispose of her property as he might see fit.

Upon the filing of such petition the county court, on motion of Harley M. Massey, the proponent, transferred "the matter pertaining to the admission of the document filed purporting to be the Last Will and Testament of Madge C. Massey, deceased, to the Circuit Court of the State of Oregon for Umatilla county." Thereafter Grace C. Branchflower, individually, and as administratrix of the estate of Madge C. Massey, deceased, and her three sisters, hereinafter referred to as the contestants, filed an answer to the petition for probate of the instrument alleged to be the last will and testament of the deceased. This answer denied that the deceased left a last will and testament and admitted the other allegations therein. As an affirmative defense the contestants alleged that on the 18th day of November, 1935, and for many years prior thereto, Harley M. Massey and Madge C. Massey were husband and wife; that on or about that date

they mutually agreed with each other to execute mutual wills, "each making the other the principal beneficiary; that on the said day and pursuant to said agreement, to make, acknowledge, execute and publish mutual wills the decedent, Madge C. Massey, made, executed and published in the presence of two witnesses a will in words and figures as follows:" Here is set forth a copy of that will, which is identical to the copy attached to the petition of Harley Massey. The answer then alleges that "at the same time and as part of the same transaction and pursuant to said agreement between said persons to execute, publish and make mutual wills, the petitioner, Harley Myrl Massey, made, executed and published a will mutual in effect and in words and figures as follows:" A copy of the will of Harley Massey is then set forth, which is in the identical language as that of the will of Madge C. Massey, except that the names of the testator, the beneficiary, and the executor are reversed.

It is then averred in the answer that in the month of January, 1936, and subsequent to the execution of said mutual wills, Harley Massey was granted a decree of divorce from Madge C. Massey; that on the 8th day of February, 1947, Harley Massey was married to Marie B. Whetzel, and that ever since that time they have been husband and wife; that subsequent to the execution of said wills, the will executed by Madge Massey was placed in the possession of Harley Massey and was kept and retained in his possession until after her death; and "that the said wills were executed in consideration of the mutual promises of the testators not to intermarry with a third person during the time that both testators were living." The answer concludes by alleging that "by reason of the facts herein set

forth the joint and mutual wills of the respective parties so made, executed and published pursuant to agreement, so dated the 18th day of November, 1935, have been and are revoked and are of no force or effect.''

A demurrer was filed by Harley Massey, proponent, to the foregoing answer on the ground that the facts set forth in said answer did not state any defense to the petition for probate of the purported will. This demurrer was sustained, and, upon the failure of the contestants to plead further, an order was made admitting to probate said instrument as the last will and testament of the deceased. In said order it is also adjudged and decreed that said last will and testament ''was never revoked or annulled by the said Madge C. Massey during her lifetime.'' From this order the contestants have appealed.

The contestants assign as error the action of the Circuit Court in sustaining the proponent's demurrer to the contestants' answer and in entering the decree admitting to probate the alleged last will and testament of the decedent, Madge C. Massey, made on the 18th day of November, 1935. They contend that when Harley Massey married Marie Whetzel he breached the contract between himself and his former wife against remarrying a third party, and that the effect of such marriage was to revoke his will, and that a revocation thereof had the effect of revoking the will of the decedent.

The proponent, on the other hand, asserts that a probate court is without jurisdiction to determine whether there was a contract between the proponent and the decedent to execute mutual wills, and further contends that, if a probate court has such jurisdiction,

a subsequent revocation of a mutual contractual will by one of the parties does not operate as a revocation of the will of the other.

We shall first consider the authorities cited by proponent in support of his contention that the probate court lacks jurisdiction to determine whether such a contract existed and the effect of a breach thereof by one of the contracting parties on the will of the other party. In *Brazil v. Silva,* 181 Cal. 490, 185 P. 174, the plaintiffs, in a suit in equity, "sought to charge the defendant with a constructive trust," based on the defendant's alleged fraud which "consisted in her preventing by deceit the actual destruction animo revocandi of the will in which she is the sole beneficiary". To the complaint defendant demurred. In discussing the question whether the demurrer was properly sustained in the superior court, the supreme court observed:

> "In support of their contention that the complaint does not state a cause of action, counsel for the defendant advance two propositions. The first is that the matter is determined by the order admitting the will to probate. The soundness of this position depends upon whether or not the issues presented by the present complaint are questions going to the final question before the probate court; *that is, the question as to the instrument being the legal and valid will of the decedent unrevoked at the time of his death.* If the issues presented by the complaint are not of this character, it is plain that they could not be passed on in the probate proceedings, and are not concluded by the result of those proceedings." (Italics supplied.)

It was held that the question whether the defendant was guilty of fraud, and therefore should be declared

trustee of the property received under the will, could not have been determined in the probate proceeding, and consequently plaintiffs were not concluded by the order admitting the will to probate.

The facts in *In re Burke's Estate*, 66 Or. 252, 134 P. 11, are as follows: William C. Burke, on December 30, 1908, made a will bequeathing all his property to his stepdaughter. In March, 1909, he died, and a few days later the legatee filed the will with the county clerk of Douglas County without filing any petition for probate. Later a stepson of deceased filed a petition alleging that on April 29, 1885, deceased executed a will devising all his property to four individuals, and that such will was in the custody of Louisa Lehman; that such will "was made by deceased upon the consideration that his wife, Augusta Burke, would make her will, devising to him the use of all her real and personal property during his life"; that Mrs. Burke had executed her will in accordance with such agreement, and that she died in October, 1905. The petition prayed for probate of Burke's will made in 1885. The county court found that the will of 1908 was the last will and testament of deceased and admitted it to probate. The circuit court affirmed the county court. This court held that the 1908 will was admissible as evidence of the fact that the will of 1885 was not the last will and testament of the deceased but "that the county and circuit courts erred in decreeing that the will of 1908 should be admitted to probate, in the absence of any probate of such will". The following excerpt from the opinion in that case is quoted by the proponent in support of his contention:

> "The contestants cannot try out in this proceeding the question as to whether the wills were

mutual and based upon an agreement that the survivor should leave his or her property to a particular person. Such an agreement is valid if performed by the making of such wills and the acceptance by the surviving party of the fruits of the agreement, but it is valid only as a contract, the performance of which by one party and acceptance by the other has taken it out of the statute of frauds: 40 Cyc. 2117, 2118. It is no objection to the probate of a will that it violates such an agreement, or revokes a former will made in pursuance of it. While such former will is revoked as a will, it still stands as evidence of the contract. In fact, it is held in some instances that the revoking will must be first probated before a suit to enforce specific performance of an agreement under mutual wills can be enforced: 40 Cyc. 2119.''

It is significant that in the foregoing quotation the court does determine that a mutual will made in pursuance of a contract may be revoked by a subsequent will and that the contract will ceases to exist as a will but "still stands as evidence of the contract." The principal question decided was that the last will executed by the deceased, and not the earlier contractual will, should be admitted to probate. It was further held that the rights of the beneficiaries under the contract will, which had been revoked by a subsequent will, could not be determined in the probate court.

In *Van Vlack v. Van Vlack,* 181 Or. 646, 182 P. (2d) 969, 185 P. (2d) 575, the beneficiary of a contractual will resisted the probate of a subsequent will and sought to have the contractual will admitted to probate as the last will and testament of the deceased. The court held that a contract to make a will, when based upon sufficient consideration, is irrevocable, but that

a will executed pursuant thereto is revocable. It ruled that the last will of the deceased revoked the contract will and was entitled to be admitted to probate. It further held that the probate court was without jurisdiction to determine the rights of the beneficiary under the contract will. Approximately the same question was involved, and the same result reached, in *Manrow v. Deveny*, 109 Ind. App. 264, 33 N. E. (2d) 371.

Atkinson on Wills, § 70, p. 176, and 1 Alexander, Laws of Wills, § 85, p. 96, lay down the general rule that where mutual wills are the result of a contract based upon a valid consideration, such wills are revocable by either while both are living, although there has been an agreement not to revoke. This concludes a review of proponent's authorities on this feature of the case.

We quote as follows from *Lansing v. Haynes*, 95 Mich. 16, 54 N. W. 699:

"The three propositions of the contestants are as follows: (1) That these mutual wills formed a contract, and that the proponent, having revoked her own will, is thereby estopped from claiming under this will (2) that the deeds and agreement constitute an express revocation of the will; (3) that the will of the deceased is revoked by implication of law on account of the changed relations of the parties.

"If these wills constituted a binding contract between the parties, that question cannot be litigated in a contest over the probate of either will. The probate court has no jurisdiction to determine such questions. The two questions for that court to determine were: (1) Was the document presented at the time of its execution the last will and testament of the deceased? and (2) had it been revoked?"

The court, after quoting the Michigan statute providing the method by which a will may be revoked, held that the deeds and agreement, which were discussed in the opinion, did not "constitute the express revocation contemplated by the statute." The Michigan statute relative to the revocation of a will contains this clause: "excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator." The court held that subsequent changes in condition and circumstances of the testator did amount to an implied revocation of the will. The provisions of the Michigan statute relative to an express revocation by the testator are similar to those of the Oregon statute. § 2-904, O. C. L. A. But the Oregon statute does not contain the exception found in the Michigan statute and in the statutes of a number of other states.

As we construe *Lansing v. Haynes,* supra, it holds that a probate court cannot determine whether the proponent, having revoked her own will, is thereby estopped from claiming under the will executed by the deceased pursuant to a contract between the deceased and proponent. It does not hold that the probate court cannot determine whether the will of the deceased has been revoked, regardless of how such revocation might occur. It does, however, support the contention that the probate court has jurisdiction to consider matters which might establish the fact that a will has been revoked.

We are of the opinion that a probate court has jurisdiction to determine whether the facts alleged in the answer are sufficient to prove that decedent's will was revoked.

Section 2-904 was enacted in 1862 (Deady, General Laws of Oregon, p. 340, § 770) and has not been amended. It reads as follows:

"A written will can not be revoked or altered otherwise than by another written will, or another writing of the testator, declaring such revocation or alteration, and executed with the same formalities required by law for the will itself; or unless the will be burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person, in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses."

What is now § 18-301, O. C. L. A., was first enacted in 1853 (Deady, op. cit., p. 936, § 7) in the following language: "A will made by an unmarried woman, shall be deemed revoked by her subsequent marriage." *In re Booth's Will*, 40 Or. 154, 61 P. 1135, 66 P. 710, it was held that this section was not impliedly repealed by what is now § 2-904, O. C. L. A. The 1853 enactment was, after the decision in Booth's Will, amended by chapter 186, Oregon Laws, 1907, to read as follows: "A will made by an unmarried person shall be deemed revoked by his or her subsequent marriage." And it was further amended by chapter 77, Oregon Laws, 1925, to read as it now appears in § 18-301, O. C. L. A., to wit: "A will made by any person shall be deemed revoked by his or her subsequent marriage."

It was held *In re Shepherd's Estate*, 183 Or. 629, 194 P. (2d) 425, that a will made by any person was revoked by his or her subsequent marriage. See also *Booth's Will*, supra, and *Bagley v. Bagley*, 110 Or. 368, 222 P. 722. The remarriage of Harley Massey

to Marie Whetzel revoked the will which he had made pursuant to the contract with deceased.

The answer alleges that the parties to the contract for mutual wills agreed "not to intermarry with a third person during the time that both testators were living." Some question was raised at the oral argument whether such provision was in restraint of marriage and therefore against public policy. In 17 C. J. S., Contracts, § 233, p. 615, it is said that "In the absence of contrary statutory provisions, the rule against contracts in restraint of marriage does not apply to contracts in restraint of a second marriage. 3 Pomeroy, Equity Jurisprudence, 5th Ed., p. 669, § 933b, states that it seems to be settled by the overwhelming weight of authority that limitations and conditions tending to restrain the second marriage of women are valid and that by the more recent decisions the same rule has been applied to the second marriage of men. The rule above announced in C. J. S. finds support in 2 Page on Contracts, 2nd Ed., § 930, p. 1644, and the following cases: *Appleby v. Appleby,* 100 Minn. 408, 111 N. W. 305, 10 L. R. A., N. S., 590; 117 Am. St. Rep. 709, 10 Ann. Cas. 563; *Lewis v. Johnson,* 251 S. W. 136, 212 Mo. App. 19; *Stauffer v. Kessler,* 81 Ind. App. 436, 130 N. E. 651; *Nunn v. Justice,* 278 Ky. 811, 129 S. W. (2d) 564; *In re Burnside Estate,* 27 N. Y. S. (2d) 78; *Berry v. Cooley,* 188 Okla. 426, 109 P. (2d) 1081. In view of the fact that this question was not raised by any of the litigants, we shall assume, without deciding, that the provision in the contract against remarriage did not affect the validity of the contract.

■ We now come to the question whether the revocation of the will of Harley Massey, by his remarriage, had the effect of revoking the will of the deceased. As

a preface to the discussion of this question, contestants, in their brief, observe: "Frankness compels us to admit that we have found very little direct authority on the question before the court. What authorities are found seem to be rather equally divided. The trial judge well stated the lack of uniformity of the decisions on the subject when he said in his written opinion: 'Whatever view you take on the subject, you will find a respectable line of authorities supporting that view'."

We shall now review the cases cited by contestants in support of their contention that the will of deceased was revoked upon the revocation of the mutual will of Harley Massey. *In re Anderson's Estate* was before the Supreme Court of Arizona on three occasions: 14 Ariz. 502, 131 P. 975; 16 Ariz. 185, 141 P. 723; and 18 Ariz. 266, 158 P. 457. It is only with the last appeal that we are here concerned. The opinion on that appeal was written by Justice Cunningham. In a concurring opinion by Justice Franklin, in which the Chief Justice concurred, it is said: "The instrument [joint will] should not have been treated simply as the individual, personal will of each of the persons signing it. The will was revoked as a whole, and not merely as the will of one party to it."

The next case cited by contestants is *Peoria Humane Society v. McMurtrie,* 229 Ill. 519, 82 N. E. 319. That case involved the construction of a joint and mutual will of Mary W. Rouse and Harry G. Rouse, her son. That will contained the following provision:

"The one of us surviving the other is to inherit all property, real, personal or mixed, of the other, to be used as the survivor may see fit; but should both die, or if when both shall be dead if no individual will has been made, then the property of

both shall be treated as one and the same and disposed of as provided below. The one surviving is hereby appointed executor of the other without bond.''

Harry G. Rouse was married in 1896 ''and his marriage revoked the will so far as he was concerned.'' He died in 1898 or 1899, leaving his wife surviving him, and also leaving his individual last will and testament executed after his marriage. This will was admitted to probate and its provisions were duly executed and his estate was settled. On March 21, 1904, Mary W. Rouse died, and in April of that year letters of administration were issued to appellee, Leonard C. McMurtrie. In December of that year a petition was filed for the probate of the joint and mutual will of deceased and her son. The petition was denied by the probate court and by the circuit court on appeal. In holding that the marriage of the son had the effect of revoking the entire joint will, the supreme court stated:

> ''* * * It is clear that the makers intended that the portion of the will in question should take effect as the will of both or neither, and it was to be operative as a will on condition that neither of the makers should otherwise dispose of his or her property by an individual will. The property of both makers of the will was to be treated as one and the same, and was to be disposed of as a single estate if no individual will had been made. The separate property of each was to be a joint fund, and devoted to the purposes specified in the will.''

*Martin v. Helms,* 319 Ill. 281, 149 N. E. 770, involved the construction of what was the purported joint and mutual will of husband and wife. The will was properly executed by the husband but not by the

wife. In ruling that this was not the will of the husband, the court said:

"* * * The will here involved could not take effect as to Mrs. Helms. If she had died first, the instrument could not have been admitted to probate as her will, because it had not been executed in compliance with the statute. Her husband executed the will in consideration of her promise to execute it. She failed to keep her promise, and so the consideration of the husband's execution of the will failed. * * * Under the peculiar circumstances of this case, we think the instrument had to be valid as to both or it was invalid as to both. It purported to be a joint, mutual, and reciprocal will of both, for the benefit of the survivor. It was, in fact, the will of the husband only. * * * It was the intention of the parties that the instrument should be effective as the will of both and give to the survivor the estate of the one dying first. This intention and agreement were not carried out and it never became the will of either."

*Burkhart v. Rogers*, 134 Okla. 219, 273 P. 246, involved the joint and mutual will of husband and wife. At the time the will was executed the husband did not disclose to his wife that he had a daughter by his first wife. The court held that, because of the existence of such daughter, the wife could take nothing under the will in addition to what the statute gave her as an heir, and since "the will is mutual and reciprocal, and is ineffective as to W. E. Smith, it necessarily follows that it is ineffective as to Rita Smith."

*Anderson v. Anderson*, 181 Iowa 578, 164 N. W. 1042, and *Brown v. Webster*, 90 Neb. 591, 134 N. W. 185, do not appear to have any bearing on the question now under consideration.

In their brief contestants state that a "good many courts have held that they have power to decide what

subsequent changes in domestic relations or surrounding circumstances would revoke a prior will." They cite in support thereof: *In re Hall's Estate*, 106 Minn. 502, 119 N. W. 219; *In re Bartlett's Estate*, 108 Neb. 681, 189 N. W. 390, 190 N. W. 869; *In re Battis*, 143 Wis. 234, 126 N. W. 9; *In re Arnold's Estate*, 60 Nev. 376, 110 P. (2d) 204. These cases are all based upon statutes containing exceptions similar to the one in the Michigan statute hereinbefore quoted in our discussion of *Lansing v. Haynes*. Since our statute, § 2-904, O. C. L. A., contains no such exception, these cases throw no light on the subject under discussion.

Page on Wills, Lifetime Ed., § 108, p. 229, states: "Marriage will operate as a revocation of a joint or mutual will if it would operate as a revocation of the separate will of testator. Whether the marriage of one testator operates as a revocation of the will of the other is a question upon which there has been a divergence of opinion." The author cites, as sustaining the first proposition, among other cases, the following: *In re Anderson's Will*, supra, and *Peoria Humane Society v. McMurtrie*, supra. In support of the statement that marriage of one testator is not a revocation of the will of the other testator, he cites *Hinckley v. Simmons*, 4 Ves. Jr. 160, and in support of the assertion that such marriage is a revocation of the will of the other testator, he cites *Peoria Humane Society v. McMurtrie*, supra, which has hereinbefore been discussed. Apparently it has no bearing on the question last mentioned.

In 57 Am. Jur., Wills, § 693, p. 467, we find the following statement: "In the absence of a statute, the revocation of one of two wills which are reciprocal in their bequests does not operate to revoke the other will. * * * " *In re Goldsticker's Will*, 108 N. Y. S. 489,

affirmed, on other grounds, in 192 N. Y. 35, 84 N. E. 581, is the only case cited in support of the foregoing statement. It appears from the facts as reported in the New York Supplement that in 1895 the deceased, David Goldsticker, and his two brothers, Louis and Martin Goldsticker, pursuant to contract, executed mutual wills with the understanding "that said wills should remain operative only while all three of them should remain unmarried, and that subsequent to the making of said wills both Martin and Louis Goldsticker married". The contestants insisted that because of such marriage "all of the mutual wills, including that of the deceased * * *, were and became revoked." In holding adversely to the contention of contestants, the court said:

" * * * This last ground of objection was properly overruled by the surrogate. Assuming the will of 1895 to have been originally well executed and valid, it could be revoked only by one of the means prescribed by statute. [Citing authorities] Nowhere in the statute can there be found a provision that an agreement de hors the will that it shall remain operative only until a certain event occurs will work a revocation of the will upon the happening of the specified event. The marriage of Martin and Louis Goldsticker may have relieved the deceased from any contractual obligation not to revoke his will in their favor, if such obligation ever existed, but certainly did not ipso facto revoke it." 108 N. Y. S. 489, 491.

*In re Watson's Will,* 213 N. C. 309, 195 S. E. 772, is similar to the case just discussed. In the Watson case, deceased, W. J. Watson, and his two brothers, made mutual wills pursuant to a contract. They were all then unmarried. Later, the deceased's two brothers married, and it was contended that their marriages

not only revoked their wills but that of the deceased. In denying this contention, the court stated:

"The method of revocation other than those mentioned in the statute just quoted [similar to § 2-904, O. C. L. A.] is 'by subsequent marriage of the maker' provided by C. S. § 4134. Under this provision the other two of the tripartite wills may have been revoked by the marriage of the makers thereof, and, while such revocations may have relieved W. J. Watson of any obligation to continue his will in effect, it only gave him the option of revoking it, and did not ipso facto revoke it."

We quote from *In re Pennington's Estate,* 158 Kan. 495, 148 P. (2d) 516, as follows: "We note that in Georgia there is a statute which provides that the revocation by one party to a mutual will operates to revoke the other party's will. *Clements v. Jones,* supra. In want of such a statute no such result could be declared."

The authorities on which contestants rely are those involving joint mutual wills, and are not instances where separate wills are made by the testators. Besides, in several of the cases cited by them there were particular circumstances which indicated that it was the intention of the testators that the will should be the will of all the testators, or none of them.

In the instant case the will of the deceased was not expressly or impliedly revoked in the manner provided by any Oregon statute. The remarriage of Harley Massey may have relieved the deceased from any contractual obligation not to revoke her will in his favor, if such obligation ever existed, but such remarriage did not, in our opinion, revoke the deceased's will. Her will was not in the least affected by the revocation of Harley Massey's will.

The decree appealed from is affirmed.