ARLINE CZEPIEL *v.* ADOLPH CZEPIEL ET AL.

SUPERIOR COURT      MIDDLESEX COUNTY      FILE No. 13234

Memorandum filed September 10, 1958

*Belton A. Copp* and *Ralph P. Dupont,* of New London, for the plaintiff.

*Norman Sivin,* of Old Saybrook, and *Edward Stoll,* of Deep River, for the defendants.

FITZGERALD, J. This is an appeal from a decree of the Court of Probate for the district of Old Saybrook admitting to probate an instrument purporting to be the last will and testament of John Czepiel, late

of Old Saybrook, hereinafter referred to as the testator. The appealing plaintiff is the widow of the testator and the defendants are the two coexecutors named in the will and the two minor children of the testator by an earlier marriage.

Counsel are in agreement regarding the subordinate facts, which may be reduced to this statement: The will was executed January 21, 1954. At that time the testator was forty-eight years of age and a widower. He had two children living, the issue of an earlier marriage, namely, Ronald, age sixteen, and Beverly, age eight. It was not until eighteen months after the execution of the will that he became acquainted with the plaintiff, whom he married February 2, 1956, a little more than two years after the will was executed. The testator died March 5, 1957, a little more than a year after the marriage and a little more than three years after the will was executed. His death was due to a coronary occlusion. He was survived by the plaintiff widow and the two children of his earlier marriage. The will had never been expressly revoked. It was admitted to probate April 26, 1957, over the objection of the plaintiff, who had unsuccessfully petitioned that it be declared to have been impliedly revoked by force of a certain statute considered later and that the estate be settled as an intestate estate. The value of the entire estate is approximately $250,000 in round figures. It consists largely of securities. Included are other items of property such as a package store liquor business and the home premises located in Old Saybrook, the latter having a value set at $11,500.

The statute upon which the plaintiff rests her appeal is § 6956 of the General Statutes. It is entitled "Implied and express revocation of will," and provides: "If, after the making of a will, the testator shall marry or a child shall be born to [him] or a minor child shall be legally adopted by him, and no

provision [was made in his] will for such contingency, [it] shall operate as a revocation of such will. No will or codicil shall be revoked in any other manner except by burning, cancelling, tearing or obliterating it by the testator or by some person in his presence by his direction, or by a later will or codicil."

Only three paragraphs of the will need be considered in gauging the problem presented, which concerns the aspect of implied revocation under the statute. In the first paragraph the testator declares himself to be a widower and the father of two children, Ronald and Beverly. As already noted, these children are issue of his earlier marriage. The third paragraph reads: "My house and land on Dudley Avenue in said town of Old Saybrook I devise to my children, now or later born, who survive me, share and share alike, subject to the restriction that if I leave a widow, said widow is to have the life use of said house and land provided that she pay the taxes thereon and the cost of maintenance." As already noted, this item of property has a value set at $11,500. The fourth paragraph designates his children as the residuary legatees and devisees, with provisions for the establishing of a trust if any should be under the age of twenty-five at the time of his death.

The question for decision broadly framed by counsel is stated thus: Is a reference in a will to the possibility of any marriage to any person at any time sufficient compliance with the statute (§ 6956) so that the will is not impliedly revoked by operation of this statute (1) even though the testator is survived by a widow who had become his wife two years after he had executed the will and whom he did not know at the time of its execution and (2) where a restricted gift is made in the will to a surviving widow which relates to but one item of real estate

which constitutes only a small fraction of the total estate?

The statute has been before our Supreme Court of Errors for construction in regard to the interpretation of that portion which is concerned with an after-born child of the testator. See *Blake* v. *Union & New Haven Trust Co.*, 95 Conn. 194; *Strong* v. *Strong*, 106 Conn. 76. So also on one occasion that portion of the statute added by later amendment, which is concerned with the adoption of a child, has received an interpretation. See *Fulton Trust Co.* v. *Trowbridge*, 126 Conn. 369. In *Williams* v. *Williams*, 15 Conn. Sup. 111, 112, the learned Judge King made a cogent observation in regard to the statute as it relates to an after-born child when he said: "Some generality of expression must be permitted under the statute or else a new will would have to be made each time a child was born."

To date our Supreme Court has not been asked to interpret that portion of the statute which is concerned with marriage of a testator after the execution of a will. This is the portion that the plaintiff is asking the court to consider within the limits of the question propounded. The key words in the statute which control its application on the question of the occurring or nonoccurring of an implied revocation of a will are the words "provision" and "contingency." "To provide for a contingency is to prepare for the happening implied by its nature. Provision for, assumes and implies prevision of the possible event,—foresight enough of the chance of its happening to indicate that any present undertaking, upon which its assumed realization might exert a natural and proper influence, was entered upon in full contemplation of it as a future possibility." *Blake* v. *Union & New Haven Trust Co.*, 95 Conn. 194, 197. Black's Law Dictionary (3d Ed.), in defining the word "provision," cites the *Blake* case as the basis

of its definition. Webster's New International Dictionary (2d Ed.) gives this definition of the word "contingency": "[A] chance event; often, an event or condition looked forward to as possible or probable, or one dependent upon an uncertain happening."

To go no further, the conclusion is amply warranted that when the testator executed his last will on January 21, 1954, he had in mind the contingency of a second marriage and made at least a nominal provision for a widow surviving him. That is all that the language of the statute requires on this aspect. The fact that he was not at that time acquainted with the woman who became his second wife and ultimately his surviving widow is deemed to be of no moment when considered in the light of the definition of the key words contained in the statute. Granting that the provision made in the will for a surviving widow is meager in view of the size of the total estate, another statute (Cum. Sup. 1955, § 3002d) is designed to alleviate any unjust result. It accords the plaintiff as surviving spouse an election to have one-third of the estate set out to her for life use in lieu of the scant provision made for the surviving widow under the will.

In support of her position the plaintiff has urged that the result obtained in certain cases decided in other jurisdictions should control the decision in this case. An extensive annotation in 127 A.L.R. 750, 768 et seq., on the general subject has been examined. Apart from the different phraseology used in some of the statutes of other states, the short answer is that given in the *Blake* case, supra, 198, that our statute "is too clear in itself to justify a resort to outside aid in establishing its meaning."

The case of *Gillmann* v. *Dressler,* 300 Ill. 175, cited by the plaintiff among an array of cases of other

jurisdictions, is the one most favorable to her position. In that case a bachelor provided generally in his will that in the event he should marry and his wife should survive him, she should receive certain property; and there was nothing in the will to indicate that he had in mind marriage to the woman he subsequently married three years later and who survived him. The majority membership of the Supreme Court of Illinois, in holding that the subsequent marriage revoked the will, said (p. 177): "It is not a devise to her conditioned upon such marriage or a statement that he contemplated marrying her, but it is a general provision that in case he should marry, the person who should then be his wife was to receive certain devises or bequests. . . . To hold that such a rule should apply to a case where a devise is made simply upon the happening of an event which the will does not show to have been considered as certain to happen but which is viewed merely as one of the possibilities of his life, would be to extend the rule beyond that laid down in [an earlier Illinois case] and to nullify [the provisions] of our statutes."

Whatever solace the plaintiff may have derived from the majority opinion in the *Gillmann* case, supra, must necessarily be deprived her because of a subsequent decision of the highest court of that state. In 1955 the Supreme Court of Illinois in an unanimous opinion declared that its decision in that case "and similar decisions, is unsound, and such cases are hereby expressly overruled." *In re Estate of Day,* 7 Ill. 2d 348, 358.

Further discussion would add nothing of value.

Judgment is required to be entered dismissing the appeal.