(No. 33599.—

IN THE MATTER OF THE ESTATE OF WILLIAM E. DAY, SR.—
(C. E. DAY, Appellee, *vs.* WILLIAM E. DAY, JR., Appellant.)

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

LeForgee, Samuels & Miller, and Denz, Lowe & Limerick, both of Decatur, (Carl R. Miller and Jerald E. Jackson, of counsel,) for appellant.

Pfeifer, Fixmer, Gasaway and Simhauser, of Springfield, (John P. Fixmer, and Frank M. Pfeifer, of counsel,) for appellee.

Mr. Justice Klingbiel delivered the opinion of the court:

The issue presented in this case is whether a marriage ceremony, entered into by William E. Day about six weeks after he had executed his will, worked a revocation of the will. The county court of Fayette County denied probate of the will on the ground that it had been so revoked.

The circuit court, on appeal, found that the will was not revoked by the marriage ceremony, and entered an order remanding the cause to the county court with directions to admit the will to probate. Since a freehold and constitutional questions are involved, the appeal comes directly to this court.

The validity of testator's marriage depends upon that of an antecedent divorce. On July 23, 1947, he executed the will in question, by which he gave one half of his estate to Mrs. Frone Lowe Allison, the woman whom he subsequently married; one fourth to William E. Day, Jr., his son; and the remaining one fourth (after payment of a $2500 legacy to another beneficiary) to C. E. Day, his brother, who was the plaintiff in the circuit court proceedings and is the sole appellee here. The testator's son, William E. Day, Jr., a defendant in the circuit court, is the sole appellant.

The record discloses that a few days after the testator's will was executed Mary F. Allison, referred to in the will as Mrs. Frone Lowe Allison, left her home in Illinois and want to Reno, Nevada, where she obtained a purported divorce six weeks later. Her husband had executed and caused to be filed in the divorce suit a verified power of attorney appointing an attorney to represent him and authorizing the attorney to accept service and answer the complaint. An answer was filed on the husband's behalf denying the allegations relating to domicile, and his attorney was present at the trial of the case. The Nevada court specifically found the plaintiff to have been a resident of Nevada for six consecutive weeks and more immediately preceding the commencement of her action. On the same day she obtained the divorce she married the testator in Reno, and after taking a short honeymoon trip they returned to Illinois, where they lived until the testator's death on September 15, 1953.

The circuit court found that Mrs. Allison did not estab-

lish a domicile in Nevada; that her decree of divorce was null and void for want of jurisdiction; that the marriage ceremony between her and the testator was therefore of no force and effect, since she was still the wife of another man; and that as a result the will was not revoked by reason of the marriage ceremony. The first question presented is whether the court erred in denying full faith and credit to the Nevada divorce decree. Mary F. Day (formerly Mrs. Allison) was called by the plaintiff as an adverse witness under section 60 of the Civil Practice Act, and testified that on her trip to Reno she took only her own personal clothing and supplies; that she had an understanding with the owner of the motel at which she stayed that she would be there only six weeks; that she was married to the testator and left Reno all on the same day, after she had obtained her decree; and that her only purpose in going there was to secure a divorce. It also appears that in the divorce proceedings her husband's answer and power of attorney were filed only one minute after the complaint was filed, he was not personally present, and his attorney neither introduced evidence nor questioned either of the two witnesses who testified.

If the circuit court was free to re-examine the matter of domicile we would sustain, as being amply supported by the evidence, its finding that Mrs. Allison failed to establish a domicile in Nevada. But the court was not free to retry that question. The Nevada decree recites that she was and had been a *bona fide* resident and a domicilary of Nevada for the prescribed period of time; and it is undisputed that the defendant husband appeared in the suit through authorized counsel and had full opportunity to contest the jurisdictional issue. The rule may now be taken as established that the constitutional requirement of full faith and credit bars either party to a divorce from collaterally attacking the decree on jurisdictional grounds in the courts of a sister State, where the defendant par-

ticipated in the divorce proceedings and was accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered it. (*Sherrer* v. *Sherrer*, 334 U.S. 343, 68 S. Ct. 1087, 92 L. ed. 1429; *Coe* v. *Coe*, 334 U.S. 378, 68 S. Ct. 1094, 92 L. ed. 1451.) And it has further been held that a divorce decree which, under the full-faith-and-credit clause, cannot be attacked in a sister State by a party to the divorce proceeding, cannot be so attacked by a stranger to such proceeding, where the stranger would have no standing to challenge it in the State of its rendition. (*Johnson* v. *Muelberger*, 340 U.S. 581, 71 S. Ct. 474, 95 L. ed. 552; *Cook* v. *Cook*, 342 U.S. 126, 72 S. Ct. 157, 96 L. ed. 146.) There is no suggestion in the record or briefs in the present case that under the law of Nevada the divorce decree could successfully be subjected to the present type of collateral attack either by a party or by a stranger thereto. In the absence of a contrary showing it will be presumed that the law in a foreign State is the same as in Illinois, (*McCallum* v. *Baltimore and Ohio Railroad Co.* 379 Ill. 60; *People ex rel. Stockham* v. *Schaedel*, 340 Ill. 560,) and in this State a divorce decree showing on its face the required period of residence on the part of the plaintiff cannot be collaterally attacked where the defendant appeared in the divorce suit and had an opportunity to be heard on the issue. (*Steffens* v. *Steffens*, 408 Ill. 150.) Thus no matter what may have been the actual fact as to Mrs. Allison's domicile in Nevada, the appearance and participation by both parties in that suit preclude further inquiry elsewhere. The full faith and credit to which the Nevada decree is entitled forbids the courts of this State to find, on new evidence taken here, that the Nevada court made an erroneous decision as to its jurisdiction.

Appellee seeks to distinguish the present case from the

*Sherrer* and *Coe* cases on the ground that in each of the cited cases both husband and wife were personally present in the foreign court and participated "actively" in the proceedings, whereas in the case at bar the husband was not personally present in Nevada and his only personal participation in the proceedings consisted of signing the power of attorney. It is further complained that her husband joined with Mrs. Allison in a fraudulent attempt to confer jurisdiction on the Nevada court.

In answer to this argument it is sufficient to say that the *Sherrer* and *Coe* cases did not predicate their holdings upon the extent of defendant's activity in the divorce proceedings, but rather upon the fact that he entered an appearance and had the opportunity to contest the jurisdictional issues. It can hardly make a rational difference that the question of domicile is in fact vigorously contested. The extent of activity, contest or participation must vary in almost every case, and it is not in the interest of stability and permanency of divorce decrees, rights of property and other important rights dependent thereon, that such indefinite criteria determine the question of validity. That appellee's position is without merit is evident from the decision in *Chittick* v. *Chittick*, 126 N.E.2d 495 (Mass.), where the rule of the *Sherrer* and *Coe* cases was applied even though the defendant husband appeared in the foreign jurisdiction only through counsel and took no more active part in the litigation than did the husband in the divorce proceeding involved in this case. In that case, as in the case at bar, the plaintiff wife went to the foreign jurisdiction, stayed at hotels, engaged in no business or occupation, filed her complaint immediately upon the expiration of the six-weeks period, and left the day after the decree. It was held that complaints of fraud or collusion in persuading the foreign court it had jurisdiction were foreclosed under the holdings in the *Sherrer* and *Coe* cases.

We conclude that Mrs. Allison's divorce decree was valid and entitled to full faith and credit, and that her subsequent marriage to the testator was a valid one.

Appellee next insists that even if the marriage is valid it did not operate to revoke the will. The statute provides, in so far as is relevant, that "marriage by the testator shall be deemed a revocation of any existing will executed by the testator prior to the date of the marriage." (Ill. Rev. Stat. 1953, chap. 3, par. 197.) It is urged that the legal consequences of the marriage "are subject to interpretation under the particular circumstances;" and the rule is invoked that where the will contains evidence of a specific contrary intention the marriage does not operate as a revocation. In *Ford* v. *Greenawalt*, 292 Ill. 121, the testator, a widower, executed a will in which he provided that "In case I intermarry with Ruth Inscho, sister of my deceased wife, as I now contemplate doing, and she survive me, I bequeath to her" certain personal property. The testator and Ruth Inscho were married some three and one-half months later, and she survived him. We held the statutory effect does not occur where the testator provides in the will for the new relation and plainly intends that the instrument shall continue to be his will after the marriage. In *Kuhn* v. *Bartels*, 374 Ill. 231, the testator's will devised all of his property "To Miss Helen Oswald (my intended wife) of the city of Chicago," etc. When the will was executed invitations to the wedding of the testator and Helen Oswald had been sent out, and they were married five days thereafter. We observed the will showed by its terms that it should remain the will of testator after the contemplated marriage had taken place, and we held it was not revoked. In the case at bar no mention of the intended marriage is made in the will. It provides merely that "I hereby give to Mrs. Frone Lowe Allison, West Sunset Street, Decatur, Illinois, Fifty per cent of my net worth or property." The undisputed evidence shows, however,

that a few days before the will was executed the testator asked Mrs. Allison to marry him; that a week after this proposal she left for Reno, Nevada; and that immediately after the divorce was obtained, her marriage with the testator took place. It is thus evident beyond dispute that the will was in fact made in contemplation of the marriage.

The question presented is whether the General Assembly intended that a testator should be conclusively presumed to have revoked his will, even though (1) he married shortly after its execution, (2) the future wife was given a substantial portion of testator's property thereby, and (3) it is made to appear by clear and convincing evidence that the will was in fact made in contemplation of the marriage. A similar question was decided in *Wood* v. *Corbin,* 296 Ill. 129, where the testator, a widower without children, married one Bessie Pitman Johnson two days after he executed his will. By the will be devised to her a life estate in the homestead and bequeathed to her a substantial amount of stock and other personal property. In addition, the will provided for a number of legacies to others, and certain real estate was devised to testator's brother. One of the legatees filed a petition for probate of the will. The county court denied probate on the ground that the will had been revoked by the subsequent marriage, but on appeal to the circuit court the will was admitted to probate. The widow appealed to this court from the order of the circuit court. In reversing the order we held incompetent certain evidence that testator and the appellant were engaged, that she was acquainted with the execution of the will and knew its contents, and that it was executed in accordance with an understanding between them. In referring to the *Ford case* we observed: "The construction given to the statute was that it was not intended to apply to a case where the will showed upon its face that it was to remain the will of the testator under the changed condition by making specific provision for the new relation. We are now asked to

extend this construction of the statute to a case in which no mention of the intended marriage is made in the will and there is no indication in it of any intention that it shall continue to be the testator's will after his marriage." After pointing out that the marriage created a different relation and that the gifts were not conditional on the marriage, as in the *Ford case,* we concluded: "It is mere conjecture to guess at what the intention of the testator may have been after the marriage. The statute has declared that a marriage shall be deemed a revocation of a will, and it must have that effect except in the case of a will which provides on its face for a future marriage and makes provision for the wife conditioned upon such marriage taking place." A similar result was reached in *Gillmann* v. *Dressler,* 300 Ill. 175.

The rule of the *Ford case,* which this court refused to extend in *Wood* v. *Corbin,* was founded upon the testator's presumed intention in the absence of any provision for the changed condition. Thus, after referring to the fact that "revocation" of an instrument can only be by act of the person who made it, we said, in the *Ford case:* "The statute declares that a subsequent marriage shall be deemed a revocation of a will, which means that the act of the testator in entering into the new relation shall be considered and regarded as a recalling, canceling or setting aside of his will; * * *." It was pointed out that under the law existing when the statute was enacted, marriage constituted an implied revocation of a will where no issue was born and the widow became an heir at the death of the testator. With reference to the statute we observed: "It is not improbable that the General Assembly * * * intended only to change the existing law by eliminating the condition that there should be no issue of the marriage."

In *Tyler* v. *Tyler,* 19 Ill. 151, decided prior to the statute, it was held that "marriage under our statute making the wife heir to the husband and the husband heir to the

wife, where there is no child or descendant of a child, is, *in the absence of facts showing an intention to die testate arising subsequent to the marriage,* a revocation of a will of the husband, made prior to the marriage, disposing of his entire estate without making provision in contemplation of the relations arising out of it." (Emphasis supplied.) It appears, therefore, that prior to the statute the presumption could be rebutted by facts appearing otherwise than in the terms of the will itself, and that the legislature probably did not intend to change the law in this respect.

No logical basis has been suggested for the rule that evidence to rebut the presumption, no matter how clear and convincing, is not enough unless provision appears in the will itself. If the presumption can be rebutted, as in *Kuhn* v. *Bartels,* by merely including in the will the words "my intended wife," there would seem to be no logical reason why it should not be rebutted by clear and convincing evidence that the person named in the will is in fact testator's intended wife, even though such evidence does not appear by the terms of the will itself. The legislative purpose to prevent artificial or questionable revocations is evidenced by provisions of the statute on wills declaring that wills shall not be revoked except by one of the methods therein specified; and it appears unreasonable to ascribe to the legislature an intention to declare that a revocation by marriage occurs even though it is evident the testator in fact made the will in contemplation of the marriage. While evidence to rebut the presumption should be clear and convincing, we can see nothing in the statute to require that such evidence must appear on the face of the will.

In the case at bar it is clear that the gift to Mrs. Allison constituted a provision for an anticipated change of circumstances creating new duties and obligations; and that in the light of the evidence this provision for the intended wife sufficiently rebuts the statutory presumption

358

of revocation, despite the fact that she is not referred to as such in the will itself. The rule to the contrary, as applied in *Wood* v. *Corbin,* 296 Ill. 129, *Gillmann* v. *Dressler,* 300 Ill. 175, and similar decisions, is unsound, and such cases are hereby expressly overruled.

The order of the circuit court reached the correct result, and will be affirmed accordingly.

*Order affirmed.*