256 A.2d 510.
Maro S. Davtian *et al. vs.* Haig Barsamian.

AUGUST 13, 1969.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  This is a petition for leave to prosecute out of time an appeal from two decrees of the Providence Probate Court.  It was instituted pursuant to the provisions of G. L. 1956, §9-21-6, as amended.  At oral argument, the petitioners requested that, if the desired statutory relief could not be made available to them, we treat this petition as one filed under §8-1-2[1] and issue such extraordinary writ and process as will prevent a manifest injustice.

This proceeding has a distinct international flavor to it and consists essentially of litigation concerning the Russian grandchildren and the Bulgarian grandchildren of Ohanes Artun Tavitian who died intestate in Varna, Bulgaria, on September 29, 1959.

Ohanes at the time of his death was a citizen of Bulgaria. His only survivors were two sons — Arutiun Davtian and Sisak Davtian.[2]  At the time of his father's death, Arutiun was living in the Armenian Soviet Socialist Republic (Armenia) having been repatriated from Bulgaria to Russia in

---

[1]Section 8-1-2 reads: "Jurisdiction and powers of court.—The supreme court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided; it may issue writs of habeas corpus, of error, certiorari, mandamus, prohibition, quo warranto and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law; it may entertain informations in the nature of quo warranto and petitions in equity to determine title to any office; it shall have jurisdiction of petitions for trials and new trials, as provided by law, of bills of exceptions, appeals and certifications to the supreme court, and special cases in which parties having adversary interests concur in stating questions for the opinion of the court as provided by law, and shall by general or special rules regulate the admission of attorneys to practice in all the courts of the state."

[2]The file accompanying this petition is replete with various documents and certificates which are in the Russian language. This material has been translated into English. The names of all the parties are spelled differently in the various exhibits presented to us. This accounts for the difference in the last name of the father and that of his two sons.

September 1944. After moving to Armenia, he married petitioner Maro, on November 11, 1948 in the city of Stepanavan. The other petitioners, Alisa, Takun and Ovanes, were born of this marriage. All of the children are minors. Arutiun died intestate about two months after his father on November 28, 1959, survived by the within petitioners. The petitioners thereupon succeeded to Arutiun's interest in Ohanes' estate.

Sometime after Ohanes' death, it was discovered that he was the owner of a savings account in the Industrial National Bank of Rhode Island. The balance in the account was in excess of $10,000. On October 16, 1961, Sisak, in Bulgaria, executed a petition for the administration of his father's Rhode Island estate. The petition was then forwarded to this country and filed in the Providence Probate Court on October 30, 1961, and docketed as "Estate of Ohanes Artun Tavitian No. 62778." In this petition, Sisak made an affidavit and stated that he was the sole heir of his father. The respondent was appointed administrator. Naturally, petitioners received no notice of the probate proceedings. On August 9, 1962, a decree was entered in the probate court which approved the administrator's first and final account and ordered the balance paid into the registry of the court. Thereafter an account was established in the registry and docketed as "Estate of Sisak Davitian No. 63538."

Five years elapsed without any effort being made to withdraw the money from the registry. This five-year period of inactivity can be best explained by pointing out that it was due to the reluctance on the part of the probate court to authorize the transfer of moneys to countries located behind the Iron Curtain. Nevertheless, on May 3, 1967, respondent, as attorney for the estate of Sisak, filed a petition in the probate court for the withdrawal and distribution of the funds to Sisak's widow and children. This

petition brought to light the fact that Sisak had died intestate almost four years previously in Bulgaria on February 23, 1963. Notwithstanding the fact that no probate proceedings were initiated in Sisak's estate, the court granted the petition. On April 30, 1968, respondent informed the probate court that the percentages payable to the widow and children which were set forth in his original withdrawal petition were not in conformity with Bulgarian law. He therefore asked permission to alter the percentages contained in the original petition and order. The court then entered a decree which permitted a withdrawal of the money and a payment thereof to Sisak's heirs in accordance with the percentages set forth in the amended petition.

The petitioners began this suit two months later on July 11, 1968. It is conceded that the funds which are the subject of the present dispute are and still remain in the registry of the probate court.[3] In this suit, petitioners seek permission to take belated appeals from the August 9, 1962 decree entered in Ohanes' estate and the decrees which authorized the withdrawal of the registry funds.

The respondent, in asking that we deny the present petition, points out that §9-21-6, as amended,[4] bars any action

---

[3]Although the respondent has in his possession written authority of the probate court to withdraw the funds in the registry, he has deferred withdrawing the money pending the disposition of the instant petition.

[4]Section 9-21-6, as amended, reads: "Allowance of appellate proceedings after time expired.—When any person is aggrieved by an order, decree, decision or judgment of the superior court or of any probate court or town council, and from accident, mistake, unforeseen cause, excusable neglect, or lack of evidence newly discovered, has failed to claim or prosecute his appeal, or to file or prosecute a bill of exceptions, or motion, or petition for a new trial, the supreme court, if it appears that justice requires a revision of the case, may, upon petition filed within one (1) year after the entry of such order, decree, decision, or judgment, allow an appeal to be taken and prosecuted, or a bill of exceptions or a motion for a new trial to be filed and prosecuted, upon such terms and conditions as the court may prescribe."

unless the petition is filed within one year after the entry of the decree complained of. Since more than five years have elapsed since the entry of the final account in Ohanes' estate, the statute, he contends, is inapplicable to that estate.

We agree that the legislature has limited relief granted by §9-21-6, as amended, to those instances where a petition is filed within a year following the entry of a decree. However, even if the present petition had been filed within a year of the decree approving the first and final accounting in Ohanes' estate, this statute provides no basis for relief from the grounds upon which petitioners have framed their petition.

In the instant petition, it is alleged that on October 16, 1961, when Sisak executed the petition for administration of his father's estate, he was aware that his brother had left Bulgaria some years before and gone to Armenia. It may be, they say, that Sisak did not know what had happened to his brother but in the absence of any inquiry on his part as to what fate might have befallen his brother during the interval between 1944 and 1961, Sisak could not and should not have sworn that he was his father's sole heir. It is petitioners' position that Sisak had a duty to disclose to the probate court the possible survival and location of his brother so that the court could have taken appropriate measures[5] to safeguard the rights of Arutiun or

---

[5]In their brief, petitioners suggest the following courses of action that might have been taken by the probate court had it been made aware of Arutiun's repatriation:

1. The court might have directed the administrator of Ohanes' estate to make a further investigation in an effort to discover Arutiun's present residence.

2. A guardian ad litem could have been appointed pursuant to the provisions of §33-22-17.

3. The court might have ordered that pursuant to the provisions of §33-22-13, notice of the pendency of Sisak's petition be published in some

190

his survivors. Sisak's failure to inform the court about Arutiun's departure to Armenia, petitioners claim, constitutes a fraud being perpetrated on the court. The respondent denies any misconduct on Sisak's part and attributes petitioners' present plight to Arutiun's failure to communicate with either his father or brother once he took up residence in the Soviet Union.

As will be seen, it is not necessary to classify Sisak's failure to make any reference to Arutiun in the 1961 petition. However, assuming that Sisak's nondisclosure was a fraud, §9-21-6, as amended, contains no language which embraces the type of fraud attributed by petitioners to Sisak. The statute speaks of "* * * accident, mistake, unforeseen cause, excusable neglect, or lack of evidence newly discovered * * *." As an indication that the legislature intended the relief available under this statute to be limited to the grounds specified therein, we note that in 1965 when it amended the statute, it added but one additional basis of relief, namely, "excusable neglect." Moreover, we are convinced that the legislature never intended that a one-year statute of limitation be invoked in a case such as the one before us. Here, petitioners assert that Sisak's nondisclosure fraudulently deprived them of a basic due process right which is inherent in any judicial proceeding — that of notice. Certainly if the general assembly desired that §9-21-6, as amended, would be utilized in such instances, it would not have included the one-year time limitation because it is obvious that in a case where lack of notice is due to a fraudulent act, an aggrieved party might well remain ignorant of his loss for years after its occurrence.

So far as the probate court's authority to order the pay-

paper published in the Armenian Soviet Socialist Republic. A death certificate which is part of the record shows that Arutiun died in the city of Yerevan (also spelled Erevan). This city is the capitol of Armenia and in 1959 had a population of over a half million.

ment of moneys in the registry of that court to Sisak's widow and children is concerned, we can find no statutory authority for this action. Any such payment could only have been legally made, after a petition for the appointment of administrator has been filed, due notice thereof given, an administrator appointed and creditors afforded the opportunity to file their claims. Here the court's actions, some four years after Sisak's death, cut off the rights of any creditors to initiate probate proceedings in this estate pursuant to §33-8-8, paragraph second. Several of the statutes of limitations were still running in May 1967. The probate decrees allowing the payment of registry funds directly to Sisak's widow and children have no legal basis and are a nullity.

Even though §9-21-6, as amended, is inapplicable, there is no need on our part to issue any extraordinary process, because, in our opinion, the legislature has provided another adequate remedy. Section 33-22-6, in essence, provides that a failure to list on any petition for probate or administration such pertinent information as the names and addresses of a surviving spouse or the heirs at law or the failure to give the required statutory notice shall not defeat the jurisdiction of the court, but that upon discovery of the omission, the probate court shall "make such further orders as the circumstances may require."

As noted before, the net balance of Ohanes' estate is still on deposit in the registry of the probate court in the name of Sisak's estate. This fact makes the relief that can be afforded by resorting to §33-22-6 particularly appropriate. The petitioners may, within 30 days of the publication of this opinion, file a petition in the Providence probate court in which they shall recite the facts as set forth in the instant petition and ask the court to vacate the decree of August 9, 1962 and reopen Ohanes' estate. The court upon being satisfied that the petitioners are Arutiun's widow and chil-

dren shall cause the money now in its registry and deposited in the name of Sisak's estate to be redeposited in the name of Ohanes' estate. The first and final account shall then be amended to show the respective shares payable to Sisak's estate and Arutiun's estate. The parties will then take the necessary steps to insure that an administrator is appointed in each of the brothers' Rhode Island estate. The court thereafter can effectuate the payments called for in the amended account from the moneys in the registry which have been redeposited to the credit of Ohanes' estate.

In conclusion, we wish to stress that any allegations made about Sisak's conduct should not be taken as any reflection on the honesty and integrity of the respondent. He is an attorney and throughout these proceedings his patience, understanding and professional responsibility have been in keeping with the best tradition of the legal profession. His conduct has been most commendable.

The petition is denied and dismissed without prejudice to the petitioners to initiate further proceedings in the probate court under the provisions of §33-22-6 in a manner as described in this opinion.

*Edwin O. Halpert, Samuel A. Olevson,* for petitioners.

*Haig Barsamian,* for respondent.