**Laureen D'AMBRA, Executrix of the Estate of Catherine I. Cole**

v.

**Harold W. COLE, Jr., et al.**

**No. 88–433–Appeal.**

Supreme Court of Rhode Island.

March 27, 1990.

Thomas L. Marcaccio, Jr., Marcaccio & Marcaccio, Providence and Lewis J. Pucci, North Providence, for plaintiff.

Timothy J. McGahan, Attleboro, Mass., for defendants.

## OPINION

MURRAY, Justice.

This case is before the court on the defendant's appeal from a Superior Court judgment quieting title to real estate devised under the will of Catherine I. Cole. The defendant, Harold W. Cole, Jr., alleges that the trial justice erred in finding that he was time barred from contesting a will allowed to probate on the basis of a petition for probate that failed to list the heirs of the decedent and which failed to give proper notice to the heirs of the decedent. The defendant further alleges that the trial justice erred in finding the conveyance of the testator's real estate by the executrix to herself was valid. The defendant also asserts that the trial justice erred in failing to find that the title to the testator's real estate passed by descent to the testator's heirs at law. Further, the defendant claims that the Probate Court had no jurisdiction to allow the probate of the will since it was revoked by the decedent's subsequent marriage. The facts are briefly as follows.

The plaintiff, Laureen D'Ambra (D'Ambra), in her capacity as executrix of the estate of Catherine I. Cole, filed a complaint in Providence County Superior Court seeking to quiet title to real estate against claims or potential claims of defendants. D'Ambra requested that the court determine the validity of the title to real estate that Catherine Cole devised to St. Pius Roman Catholic Church in her will.

D'Ambra named the heirs at law of William Cole, the late husband of Catherine Cole, in her complaint. William Cole executed a will on October 15, 1951. In the will he named Catherine Jackson as the sole beneficiary and executrix of the will. Also William Cole specifically "cut off" his three brothers, Charles Cole, Harold Cole, and Jess Cole, from any inheritance under the will. On April 14, 1952, William Cole married Catherine Jackson. William Cole never executed a will subsequent to his marriage to Catherine Jackson.

Following her husband's death on January 17, 1977, Catherine Cole filed a petition in Probate Court listing herself as the sole heir at law of William Cole. She did not name William Cole's brothers or their heirs in the petition. Therefore, aside from the notice by publication, none of William Cole's heirs at law were notified of the proceedings.

On September 28, 1977, Catherine Cole, as executrix of William Cole's will, executed a deed in which she conveyed to herself real estate at 172 Sandringham Avenue, Providence, Rhode Island. Thereafter, Catherine Cole filed an affidavit with the Probate Court stating that William Cole's estate was completely administered.

On January 9, 1983, Catherine Cole executed a will. She left several cash bequests to different people. The rest, remainder, and residue of her estate, including the real estate at 172 Sandringham Avenue, she left to St. Pius Church in Providence, Rhode Island. Catherine Cole died on October 30, 1985.

When St. Pius Church attempted to sell the real estate, the real estate was determined to be unmarketable because of a cloud on the title. D'Ambra filed a complaint seeking to quiet title to the real estate. The court appointed a title examiner. His report indicates that all William Cole's brothers predeceased him. Charles Cole died on August 24, 1961, intestate. Jess Cole died on April 29, 1958, intestate. Harold Cole died on December 26, 1975, testate. In his will, Harold Cole left his property in trust to his son, Harold Cole, Jr. A conservator, Arthur Tutton, was ap-

pointed for Harold Cole, Jr., on November 30, 1976, in the Taunton Probate Court of Bristol County by reason of "mental weakness."

The title examiner concluded that the proper defendants are Harold Cole, Jr., Charles F. Cole (son of Jess Cole), Helen M. Cole (widow and sole beneficiary of Walter Cole, who was the son of Charles H. Cole), Mildred A. Jacques (daughter of Charles H. Cole), May C. Wood (daughter of Charles H. Cole), and the unknown heirs of Charles H. Cole and Jess Cole, if living, and their heirs and devisees, if they are deceased.

The only defendant who answered D'Ambra's complaint was Harold Cole, Jr. On May 13, 1988, a hearing was held before the trial justice in Providence County Superior Court. The trial justice issued a written decision on June 8, 1988.

The trial justice found that the will of William Cole was revoked by his subsequent marriage because William Cole made no express statement in his will that it was executed in contemplation of his marriage to Catherine Cole. He found that defendants were barred from challenging the validity of the will because the twenty-day appeals period had long since run. Also a failure to list the heirs on the petition without evidence of fraud does not grant the Probate Court power to reopen the estate. The trial justice further found that Catherine Cole had a fee simple interest in the real estate. Harold Cole, Jr., moved to alter or amend the judgment, which motion was denied on June 30, 1988. The judgment was entered on August 2, 1988, and Harold Cole, Jr., filed a notice of appeal.

We believe that the query raised here is whether the trial justice erred in finding that William Cole's will was revoked by his subsequent marriage to Catherine (Jackson) Cole. General Laws 1956 (1984 Reenactment) § 33–5–9 provides:

"Revocation of will by marriage.—The marriage of a person shall act as a revocation of a will made by him or her previous to such marriage unless it appears from the will that it was made in contemplation thereof; but if the will exercises a power of appointment and the real and personal property thereby appointed would not, in default of such appointment, pass to the persons who would have been entitled to it had it been the property and estate of the testator or testatrix making such appointment and had he or she died intestate, so much of the will as makes such appointment shall not be revoked by such marriage."

In 1971 this court decided *Lessard v. Lessard*, 108 R.I. 127, 273 A.2d 307 (1971). In *Lessard* a testator executed a will leaving his estate to a woman who was also named as executrix in his will. Subsequently the woman married the testator. Following the testator's death, a petition for probate of his will was allowed. Two of the testator's children by a prior marriage objected to the probate of the will, asserting that the will had been revoked by his subsequent marriage. The court held that "entry into a subsequent marriage revokes that will by operation of law absent an *express statement* within the will that it was executed in contemplation of that particular marriage." (Emphasis added.) *Id.* at 130, 273 A.2d at 309.

We look to the history of this statute as it illustrates the General Assembly's intention to permit courts to consider the circumstances surrounding the making of the will in order to establish that the will might have been made in contemplation of marriage. G.L.1923, ch. 298, § 16, provided:

"Every will made by a man or woman shall be revoked by his or her marriage, except a will made in exercise of a power of appointment when the real or personal estate thereby appointed would not in default of such appointment pass to his or her heir, executor or administrator, or the person entitled as his or her next of kin under the statute of distribution."

In 1931 this statute was amended in such a way as to include the words "unless it appears from the will that it was made in contemplation thereof." P.L.1931, ch. 1754, § 1. This amendment was an attempt by the General Assembly to prevent a strict automatic revocation of a will by a subsequent marriage of the testator.

It would appear that the General Assembly's purpose in the enactment of this statute providing for the revocation of a will by a subsequent marriage is to recognize that a testator's intent with respect to the disposition of his estate may have changed after the execution of his will. In some circumstances, as in the instant case, this consideration is frustrated because in reality a future spouse may have been fully provided for within his or her will made before the marriage. In other words, it is our reading of this statute, viewed with the amendment, which gives us pause, without intending to be legislative, to conclude that the present amended statute was enacted by the General Assembly for the benefit of the surviving spouse. It was not intended in its interpretation to automatically defeat any well-defined intent on the part of the testator. It appears then that in reading the present statute, the court may conclude on the facts of a particular case that where intent can be found, it is consistent with both the legislative and the testator's intent that a will made in contemplation of marriage may be analyzed from the facts of the case even though the explicit words enunciated in *Lessard* do not comport with its holding. The instant case is an example of a will made prior to marriage. In the will at issue the testator specifically mentioned by name, and provided for, the individual who shortly thereafter became the spouse of the testator. This disposition evidences an intention by the testator to provide for his future spouse, thereby fulfilling the legislative purpose behind § 33–5–9.

We are mindful that courts in other jurisdictions have found in particular circumstances that the will of a testator that provided for or mentioned a future spouse of the testator was not revoked even though the will did not explicitly state that the will was made in contemplation of the future marriage. *See In re Estate of Day*, 7 Ill.2d 348, 131 N.E.2d 50 (1955); *Leggett v. Estate of Leggett*, 88 Nev. 140, 494 P.2d 554 (1972); *In re Estate of Neufeld*, 145 Misc. 442, 260 N.Y.S. 302 (1932); *In re Dexter's Estate*, 116 Misc. 17, 189 N.Y.S. 366 (1921); *Porter v. Porter*, 107 Wash.2d 43, 726 P.2d 459 (1986); *In re Steel's Estate*, 45 Wash.2d 58, 273 P.2d 235 (1954).

■ The facts of the pending case are quite similar to the facts of *In re Estate of Day*, 7 Ill.2d 348, 131 N.E.2d 50 (1955). William Day executed a will containing the provision, "I hereby give to Mrs. Frone Lowe Allison, West Sunset Street, Decatur, Illinois, Fifty per cent of my net worth or property." Shortly after the execution of this will, Mrs. Allison obtained a divorce from her husband and married William Day. Mr. Day never executed another will after his marriage to Mrs. Allison. After his death his will was contested on the grounds that it was revoked by the Illinois statute that provided: "marriage by the testator shall be deemed a revocation of any existing will executed by the testator prior to the date of the marriage." *In re Estate of Day*, 7 Ill.2d at 354, 131 N.E.2d at 53 (quoting Ill.Rev.Stat.1953, chap. 3, par. 197). The contestants asserted that the testator did not specifically state in the will that he intended to marry Mrs. Allison and therefore that the will was revoked. In rejecting this assertion, the Supreme Court of Illinois found that the statute created a presumption of revocation that could be rebutted by clear and convincing evidence that the will was made in contemplation of the subsequent marriage. The court found that there was clear and convincing evidence sufficient to rebut the presumption. The testator married Mrs. Allison shortly after the execution of the will. Mrs. Allison, the future wife, was given a substantial portion of testator's property in the will. Further the court stated:

"[I]t is clear that the gift to Mrs. Allison constituted a provision for an anticipated change of circumstances creating new duties and obligations; and that in the light of the evidence this provision for the intended wife sufficiently rebuts the statutory presumption of revocation, despite the fact that she is not referred to as such in the will itself." *In re Estate of Day*, 7 Ill.2d at 357–58, 131 N.E.2d at 55.

Likewise in the instant case § 33–5–9 creates a statutory presumption of revocation

of a will by a subsequent marriage of the testator. This presumption can be rebutted by clear and convincing evidence that the will was made in contemplation of the subsequent marriage.

■ We find that in the instant case there is clear and convincing evidence that William Cole's October 15, 1951 will was made in contemplation of his marriage to Catherine (Jackson) Cole. William Cole executed his will on October 15, 1951. In the will he devised and bequeathed all his property, including the real estate located at 172 Sandringham Avenue, Providence, Rhode Island, to Catherine (Jackson) Cole. He named Catherine (Jackson) Cole as the executrix of his will. Further he specifically stated: "I hereby cut off from this will and testament my brothers * * * my only heirs-at-law." On April 14, 1952, only six months after the execution of the will, William Cole married Catherine Cole. For these reasons we find that the will was not revoked by operation of law under § 33–5–9, and therefore, it was properly admitted to probate.

In our considered judgment we now overrule *Lessard* to the extent that it requires an *express statement* within the will stating that it was executed in contemplation of marriage. We are of the opinion that the General Assembly did not intend such a strict statutory interpretation of the phrase "unless it appears from the will that it was made in contemplation thereof" contained in § 33–5–9.

We now turn to the adequacy of the petition for probate submitted by Catherine Cole as executrix of the estate of William Cole. In attempting to challenge the will's validity ten years after its probate, defendant Harold Cole, Jr., asserts that the petition for probate was inadequate because it failed to list the heirs of William Cole. He also asserts that Catherine Cole failed to give proper notice to such heirs.

■ General Laws 1956 (1984 Reenactment) § 33–22–2, as amended by P.L. 1984, ch. 81, § 7 sets out the requirements of a petition for the probate of a will. Section 33–22–2 provides in pertinent part:

"Whenever any petition shall be filed for the probate of a will * * * the petitioner shall set forth under oath in the petition:

\* \* \* \* \* \*

(3) So far as known to the petitioner:

(A) The names and post office addresses of the surviving spouse and heirs at law."

Section 33–22–3 requires that notice be given by mail to each person named in the petition as required by § 33–22–2. A failure to comply with these requirements "shall not defeat the jurisdiction of the court or affect adversely the regularity of any proceedings in which such failure shall have occurred, and upon discovery thereof the court may *make such further orders as the circumstances may require.*" (Emphasis added.) Section 33–22–6; *see Davtian v. Barsamian*, 106 R.I. 185, 256 A.2d 510 (1969).

The record before us indicates that when Catherine Cole filed a petition to probate the will of her deceased husband, she named herself as the sole heir. She did not list any other heirs at law in the petition. Notice of the petition to probate William Cole's will was given by the publication of the Notice of the Hearing to Probate the Will and by the publication of the notice to creditors of the estate.

In *Davtian* we found that the particular circumstances of that case required allowing the petitioners to reopen an estate five years after a final account had been filed pursuant to § 33–22–6. 106 R.I. at 191, 256 A.2d at 513–14. The decedent had died intestate, survived by two sons. One of his sons filed a petition to probate the estate and listed himself as the sole heir.

We find that the circumstances of the instant case do not require the reopening of William Cole's estate. William Cole did not die intestate, but rather he left a valid and enforceable will that devised and bequeathed all his property to Catherine Cole. There is no evidence that her nondisclosure of his heirs at law was a fraudulent act. Catherine Cole had every reason to believe that William Cole's will was valid, thereby making her the sole heir of his estate. We reiterate that in his will William Cole spe-

cifically disinherited his three brothers. Moreover, all three brothers of William Cole predeceased him. William Cole had the opportunity to provide for his brothers' heirs if he had so intended. Her failure to list the brothers' heirs under the circumstances of this case did not prejudice the defendant.

For the reasons stated herein, the defendant's appeal is denied and dismissed and the judgment of the Superior Court is affirmed.

KELLEHER, J., did not participate.