DECISION
This matter is before this Court on the plaintiff's appeal from an order of the Probate Court in Warwick issued on July 13, 1994 admitting the will of the decedent, Ann Marie Bailey Dolan, to probate. Also before this Court is defendant's motion for summary judgment, to which plaintiff has objected. Jurisdiction of this Court is pursuant to R.I.G.L. § 33-23-1.
Standard of Review for Probate
Court Appeals
This Court's review of a Probate Court decision is governed by R.I.G.L. § 33-23-1, which provides in relevant part:
 Any person aggrieved by an order or decree of a court of probate, unless provisions be made to the contrary, may appeal therefrom to the Superior Court for the county in which such probate court is established . . .
Our Supreme Court has reiterated that the Superior Court is not limited to alleged errors of law made by the Probate Court, but may in practice hear the case de novo. In re Taylor'sEstate, 114 R.I. 562, 337 A.2d 236, 288, 239 (1975); Kenyon v.Hart, 38 R.I. 524, 96 A. 529 (1916); Vaill v. McPhail,34 R.I. 361, 370, 372, 83 A. 1075 (1912). A person is deemed to be aggrieved within the meaning of this section if a Probate Court order or decree adversely affects in a substantial manner some personal or property right of the one seeking review or imposes some burden or obligation upon him. Lind v. McSoley, ___ R.I. ___, 419 A.2d 247 (1980).
Standard for Summary Judgment
Rule 56(c) explicitly states that "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories . . . admissions and affidavits show that there is no genuine issue as to any material fact." Rhode Island Superior Court Rules of Civil Procedure 56(c). In making its determination, the Court must examine the record in the light most favorable to the party opposing the motion. O'Hara v. JohnHancock Mutual Life Insurance Co., 574 A.2d 1235 (R.I. 1990). If the moving party demonstrates "that there is an absence of evidence to support the non-moving party's case," summary judgment is warranted. Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986). See also Brennan v. Hendrigan, et al, 888 F.2d 189, 191 (1st Cir. 1989).
Facts Travel
On January 7, 1984, Ann Marie Bailey (now Dolan) executed a document entitled "Last Will and Testament of Ann Marie Bailey." Sometime before executing the will, the testatrix began to cohabitate with Joseph M. Dolan, Jr., first in an apartment and then in a house which Mr. Dolan had purchased in his name alone. On the same date, Mr. Dolan also executed his last will and testament. Except for certain items of personalty, each spouse devised and bequeathed his or her entire estate to the other, as primary beneficiary. Ann Marie Bailey named her niece, Christine DePalma (now Olton), defendant herein, as secondary beneficiary of the rest, residue and remainder of her estate, in the event that Mr. Dolan predeceased the testatrix. (See Exhibit C, "Last Will and Testament of Ann Marie Bailey" and Tr. at 28). In paragraph eleven of her will, the testatrix "specifically and deliberately exclude[d] [her] natural born son Dennis O'Malley or any of his issue from taking anything under this will." (Id.)
On September 5, 1984, approximately eight (8) months after executing their reciprocal wills, Ann Marie Bailey and Joseph Dolan, Jr. were married. While still married to Ann Marie, Mr. Dolan died on December 3, 1986, nearly one month after conveying the marital home from himself to his wife and himself jointly, by quitclaim deed. (Defendants' Br. at 2). Shortly after Mr. Dolan's death, Ann Marie asked Mr. Michael Boudreau, the attorney who drafted her will, if she should make another will. (Tr. at 34). Upon her attorney's suggestion, Mrs. Dolan requested that another will be drafted, this one naming Christine DePalma as the primary beneficiary and her brother, Peter DePalma, the testatrix's nephew, as secondary beneficiary in the event that Christine predeceased Ann Marie. (Id. at 36). Mr. Boudreau drafted a "preliminary document for his client's review and approval." (Id. at 37). The newly drafted document reiterated the same clause excluding the testatrix's son from taking under the will. (Id.
at 37 and Exhibit C). This document, however, appears to have never been read or signed by the testatrix. (Id.).
Ann Marie Dolan died on April 24, 1994. In a hearing before the Probate Court of Warwick, Christine DePalma Olton, the decedent's niece and sole beneficiary of the estate, petitioned the Court to admit to probate the testatrix's will executed on July 7, 1984. The Court admitted said document to probate as the last will and testament of Ann Marie Dolan. (See Probate Court Order, July 13, 1994). The testatrix's estranged son, Dennis J. O'Malley, plaintiff and appellant herein, was notified of the hearing and was given an opportunity to be heard. (Id.) The appellant objected to the admission of the testatrix's will and the appointment of Mr. Dolan (and, in default, Mr. Boudreau) as executor.
Before that Court, and now before this Court, the plaintiff appeals the Probate Court judgment and contends, inter alia,
that, 1) pursuant to R.I.G.L. § 33-5-9, the will was revoked by operation of law due to the testatrix's failure to state her specific intent to create said will in contemplation of marriage to Mr. Dolan, the named primary beneficiary; 2) alternatively, defendants are unable to put forth clear and convincing evidence of said intent; and 3) said will is void as it was procured by undue influence.
For the reasons set forth below, this Court finds the plaintiff's claims to be completely unpersuasive and, therefore, affirms the Probate Court judgment. In addition, the Court grants the defendant's motion for summary judgment and denies the attendant motion for Rule 11 sanctions.
DISCUSSION
To begin, plaintiff contends that summary judgment is not warranted and that the Probate Court erred in admitting the July 7, 1984 will of Ann Marie Bailey because, pursuant to R.I.G.L. §33-5-9, the testatrix's subsequent marriage to Joseph M. Dolan, Jr. caused the will to be revoked by operation of law. Section33-5-9 of R.I.G.L. reads:
 The marriage of a person shall act as a revocation of a will made by him or her previous to such marriage unless it appears from the will that it was made in contemplation thereof; but if the will exercises a power of appointment and the real and personal property thereby appointed would not, in default of such appointment, pass to the persons who would have been entitled to it had it been the property and estate of the testator or testatrix making such appointment and had he or she died intestate, so much of the will as makes such appointment shall not be revoked by such marriage.
R.I.G.L. 1956 (1986 Reenactment) § 33-5-9, as amended by P.L. 1986, ch. 175. Plaintiff further argues that the facts of the pivotal case of D'Ambra v. Cole, wherein our Supreme Court analyzed the parameters within which § 33-5-9 operates, vastly differ from the facts of the instant case, and, thus, its holding does not apply here. Specifically, the plaintiff contends that the defendants, the testatrix's niece and nephew, are not entitled to enforce the will because they are not within the class of persons that § 33-5-9 was designed to protect. In support of his argument, the plaintiff points to the Court's statement in D'Ambra that § 33-5-9 operates to revoke a will made before marriage but not in contemplation of marriage "`for the benefit of the surviving spouse.'" Plaintiff's Br. at 6, emphasis added in brief, citing D'Ambra v. Cole, 572 A.2d 268
at 271 (1990)). The plaintiff concludes, "[a]ccordingly, only surviving spouses are within the class of persons that the statute was designed to protect . . ." (Id. at 6).
In effect, the plaintiff argues that only a surviving spouse has standing to seek enforcement or revocation of her spouses's will pursuant to § 33-5-9, and that the legislative purpose is no longer served when the surviving spouse has died, as in the case at bar wherein Mr. Dolan, the surviving spouse and primary beneficiary of the will in question, predeceased the testatrix. Alternatively, the plaintiff contends that even if defendants are entitled to seek admission of the will to probate, they have not established by clear and convincing evidence that the will was made in contemplation of marriage. Thus, plaintiff argues, the defendant has not sufficiently rebutted the presumption of revocation prescribed by § 33-5-9 and interpreted by our Supreme Court in D'Ambra v. Cole.
Even in viewing the evidence in the light most favorable to the plaintiff, the non-moving party, this Court is not persuaded by these arguments. Our Supreme Court in D'Ambra in no way concluded that § 33-5-9 inures solely to the benefit of surviving spouses and, therefore, only surviving spouses may seek revocation or enforcement of a will made prior to a marriage. Such an interpretation of § 33-5-9 would cause every valid will potentially made in contemplation of marriage to automatically fail upon the death of a spouse. Undoubtedly, the legislature did not intend such a deleterious effect when it enacted § 33-5-9.
Indeed, the main thrust behind the Court's interpretation of § 33-5-9 in D'Ambra is unabashedly clear: to protect the sanctity of the testator's intent when creating a will and to look to surrounding circumstances to determine whether those circumstances indicate that the testator made the will in contemplation of marriage. The Court expressly stated:
 [§ 33-5-9] is not intended in its interpretation to automatically defeat any well-defined interest on the part of the testator . . . . the court may conclude on the facts of a particular case that where intent can be found, it is consistent with both the legislative and the testator's intent that a will made in contemplation of marriage may be analyzed from the facts of the case even though [no explicit words to that effect are present in the will used].[1] (Emphasis added)
Thus, the legislative and testamentary purposes are satisfied not solely when a surviving spouse is alive, literally, to enjoy the fruits of her husband's will or of intestacy if §33-5-9 operates), but when the intent of the testator can be determined by surrounding circumstances, and then effectuated. In order to protect the sanctity of the testatrix's intent, which was to provide for her soon-to-be husband and her niece, and to disinherit her son, this Court finds that the defendants are entitled to seek enforcement of the will.
It is also significant that our Supreme Court in D'Ambra
followed the lead of other jurisdictions with similar statutes by finding that § 33-5-9 creates a statutory presumption of revocation of a will by a subsequent marriage by the testator.Id. at 272. However, the Court unequivocally stated that this presumption "can be rebutted by clear and convincing evidence that the will was made in contemplation of the marriage." Id.
In determining whether the factors surrounding a testatrix's making of a will clearly and convincingly indicate that she did so in contemplation of marriage, the Court must look at the totality of circumstances in order to prevent an "automatic defeat" of the testator's intent. Id. at 271.
The Court in D'Ambra found that the factors present at the time the testator made his will constituted clear and convincing evidence that he created his will in contemplation of marriage.Id. Those factors are virtually mirrored in the case at bar. First, the testator, as did Ann Marie Dolan, devised and bequeathed his estate to an individual who "shortly thereafter" became his spouse. Id. at 271. Secondly, the will was made six (6) months before the testator married the woman to whom he left his estate. Id. In the instant case, the testatrix married Mr. Dolan eight (8) months after the execution of her will and after a period of cohabitation with her future spouse. (Tr. at 45, 46). Finally, the testator in D'Ambra expressly intended that his estranged brothers be "cut off" from inheriting his estate, much like Ann Marie Dolan "specifically and deliberately exclude[d]" her estranged son from taking under her will. Id. at 272.
In keeping with D'Ambra, and in viewing all the evidence in the light most favorable to the plaintiff, this Court finds that the factors noted above constitute clear and convincing evidence of the testatrix's intent to make her will in contemplation of marriage. Accordingly, said will is not revoked pursuant to R.I.G.L. § 33-5-9.
Undue Influence
The plaintiff argues that the testatrix was unduly influenced in the procurement of her will. In support of his argument, he puts forth certain statements by the plaintiff's uncle allegedly made after the testatrix's funeral, which purportedly indicate that despite a strained relationship, the plaintiff's mother still loved him. (Tr. at 28-30). The Court finds this argument to be without relevance or merit.
The Probate Court was satisfied that the defendant presented credible, persuasive testimony indicating that the testatrix was "sharp as a tack," was "emphatic" about excluding her son, and appeared "well satisfied" with the provisions of her will upon reading them. (Tr. at 32, 33). Ms. Rose Agnes Dolan, the testatrix's sister-in-law and testamentary witness, also testified that Ann Marie Dolan appeared to be of sound mind and body and that no one appeared to influence or pressure the testatrix to sign the document. (Tr. at 14). Moreover, the record is replete with evidence that the plaintiff saw little of his mother throughout his adult life. The plaintiff testified that he believed his mother to be "in her fifties" at the time of her death, when, in fact, Ann Marie Dolan was well into her sixties when she died. (Tr. at 55). Given the plaintiff's scant evidence on the issue, and the defendant's persuasive evidence to the contrary, it would stretch the imagination, indeed, to conclude that the testatrix was unduly influenced in the procurement of her will. Accordingly, this Court finds that she acted of her own free will.
Rule 11 Sanctions
As to the defendant's motion for Rule 11 sanctions and costs and attorneys' fees, this Court denies said motion. Rule 11 of the Superior Court Rules of Civil Procedure requires, interalia, that an attorney's signature on pleadings and papers certifies "that he or she has read the pleading; that to the best of his or her knowledge, information, and belief there is good ground to support it . . .". The rule further cautions that a "willful violation of this rule" may subject an attorney to "disciplinary action." Moreover, in assessing whether an attorney acted in "good faith," this Court must apply a subjective
standard, and not an objective one as prescribed by the federal rules. Forte Brothers v. Ronald M. Ash Associates, 612 A.2d 717
(1992). "So long as a claim has some legal and factual basis when considered in the light of the reasonable belief of the individual making the claim," sanctions are not warranted Id.
at 724 (quoting Quill Co. v. A.T. Cross Co., 477 A.2d 939, 944, R.I. (1984).
While the Court perceives the plaintiff's arguments to be creative and disingenuous at best, it does not find that this action was brought in bad faith or due to inexcusable ignorance of law, as defendants allege. The plaintiff's inheritance, notwithstanding a strained relationship with his mother, is a legitimate claim of right which he is entitled to pursue. However, plaintiff's arguments with respect to his claim are absolutely without merit. Plaintiff's mother was specific, quite specific, in excluding him from her will; and he shall remain excluded in accordance with her wishes.
Based on the foregoing discussion, the Court grants the defendant's motion for summary judgment and denies the attendant motion for sanctions, costs and attorneys' fees.
[1] In so holding, the Court expressly overruled its decision of Lessard v. Lessard, wherein the Court required that a will made prior to marriage would be revoked upon marriage unless an "express statement" was contained therein indicating that it was made in contemplation of marriage. D'Ambra, 572 A.2d at 270, overruling Lessard v. Lessard, 108 R.I. 127, 273 A.2d 307
(1971).