[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 18, 1997
The above-captioned appeal from probate involves the application of Connecticut General Statutes § 45a-257 to a will executed two days before the testator's marriage. The appellant claims that by application of that statute, her father's will, which made the woman he married his sole heir, was revoked by the marriage itself.
The appellant filed a preliminary motion in limine to exclude evidence concerning the testator's intention. She conceded in that motion that the following documents and their contents were admissible:
1) the will, 2) the marriage certificate, and 3) the death certificate. The court also found admissible a stipulation that the four persons mentioned in Article III (B) of the will are the children of the woman the testator married.
Having opposed the granting of the motion in limine, counsel for the estate put on the record an offer of proof as to the circumstances surrounding the execution of the will and the intent of the testator. No evidence was admitted on those topics, and this court has not relied on the allegations made in the offer of proof.
The issue in this appeal is whether the probate court of the district of Madison erred in its order of May 8, 1996, admitting to probate as the last will and testament of Ronald K. Erickson a will executed on September 1, 1988, that has been received in evidence as Exhibit A.
The parties stipulate that the determination of the disputed issues is a de novo proceeding pursuant to Connecticut General Statutes § 45a-186. See Andrews v. Gorby, 237 Conn. 12
(1996).
Examination of the three exhibits admitted without objection CT Page 6251 indicates that on August 22, 1988, Ronald Erickson and Dorothy A. Mehring obtained the marriage license indicates that the wedding occurred on September 3, 1988. The wording of the will does not make reference to a plan of the testator to be married, however, it provides that Dorothy A. Mehring of Madison is to inherit all of his estate "provided she survives me." The next provision of the will, Article III, is that ib. Dorothy A. Mehring predeceased the testator, his residuary estate was to be distributed "One-half (1/2), in equal parts, to my daughters, Laura Erickson, Ellen Erickson and Alicia Erickson, all of Madison, Connecticut, or to the survivors or survivor of them" and "One-half (1/2), in equal parts, to Thomas Mehring and Christopher Mehring, both of Madison, Connecticut, and Maureen Mehring and Kathleen Mehring, both of Guilford, Connecticut, or to the survivors or survivor of them."
The testator designated Dorothy A. Mehring to be the executrix of his will, with full power to dispose of his property. At Article VI, Ronald Erickson designated Dorothy A. Mehring to be the guardian of any of his daughters who had not attained the age of eighteen at the time of his death.
Exhibit C establishes that Ronald Erickson and Dorothy A. Mehring were married in Madison on September 3, 1988, that they had obtained their marriage license on August 23, 1988, and that their previous spouses had died. Exhibit B established that Ronald Erickson died of cancer on February 22, 1996. In the absence of any evidence of dissolution of the marriage, this court infers that Dorothy A. Mehring and Ronald Erickson continued to be husband and wife at the time of his death.
Section 45a-257, as it existed prior to the passage of P.A. 96-95, provided in pertinent part as follows:
 45a-257 (a) If, after the making of a will, the testator marries . . . and no provision has been made in such will for such contingency, such marriage . . . shall operate as a revocation of such will . . .
This provision was repealed by P.A. § 96-95.
P.A. 96-202 § 12 provided that the P.A. 96-95 would take effect on January 1, 1997.
As of January 1, 1997, § 45a-257 provides as follows: CT Page 6252
 Except as provided by sections 45a-257 to 45a-257d, inclusive, a will or codicil shall not be revoked in any other manner except by burning, cancelling, tearing or obliterating it by the testator or by some person in the testator's presence by the testator's direction, or by a later will or codicil.
Applicability of P.A. 96-95
The appellee takes the position that the repeal of § 45a-257
applies in this case. This argument is without merit. P.A. 96-202 § 12 clearly specifies in section 12 that January 1, 1997, is the effective date of the various revisions to the will revocation statutes, including the repeal of § 45-257.
Whether Automatic Revocation Applies
Since this court finds that the pre-P.A. 96-95 version of § 45a-257 is the applicable law, the issue is whether a provision was made in the will for the testator's marriage, two days later, to the woman he had made the beneficiary of his entire residuary estate, since the statute provides that a marriage revokes a prior will only "if . . . no provision has been made in such will for such contingency." The appellant argues to the effect that the only way to "make a provision" for a later marriage is to mention the incipient marriage in the will.
In Blake v. Union New Haven Truck Co., 95 Conn. 194 (1920), the Superior Court stated "[t]o provide for a contingency is to prepare for the happening implied by its nature. Provision for, assumes and implies prevision of the possible event, — foresight enough of the chance of its happening to indicate that any present undertaking, upon which its assumed realization might exert a natural and proper influence, was entered upon in full contemplation of it as a future possibility.
Where an adoption took place a year after the execution of a will, the Supreme Court noted that "[t]here is nothing in the will which can be construed as a prevision of adoption or provision for the contingency." Fulton Trust Co. v. Trowbridge,126 Conn. 369, 372 (1940). In Fulton Trust, the child who was subsequently adopted was a member of the testator's household when the will was executed, as the Court observed that "[a]s far CT Page 6253 as applies from [the will's] wording; Peter might have continued indefinitely to be merely a member of the household." The court indicated that it was necessary to consider whether an intention to adopt the boy was inconsistent with "an intent to revoke the will by the adoption over a year after its execution." The Court noted that the bequest in the will, which was a limited annuity rather than the share expected for an only son of a wealthy father, was "more persuasive of an intentional revocation that otherwise," that is, the Court found that the testator could reasonably have been expected to make a limited financial arrangement for someone who was not yet legally his son because the adoption would revoke that limitation and give the son, after adoption, greater rights.
The analysis of the Court in Fulton Bank includes a scrutiny of the time that elapses between the execution of the will and the event, in that case, adoption, as an indication whether the will was a provision only for a limited time or whether it was the testator's ultimate provision in contemplation of the later event. The emphasis that the adoption did not occur until "over a year" from the execution of the will indicates the court's weighing of the fact that the adoption was not even in process and that the testator was not expressing his intention in view of an imminent event.
The purpose of implied revocation statutes at issue is unmistakably to prevent the unintentional disinheritance of a surviving spouse. See 38 A.L.R. 4th 117 § 3(b). The effect of the statute is to assume that a testator merely forgot to make a new will when an important change in his immediate family occurred, and the statute aids testators by making up for that inadvertence unless the testator has clearly expressed a contrary desire by making a provision either to leave or not leave property to the new spouse.
Statutes are to be interpreted and applied in a manner that gives effect to their purpose. Florestal v. Governor's EmployeesInsurance Co., 236 Conn. 299, 310 (1996); Rose v. Freedom ofInformation Commission, 221 Conn. 217, 225 (1992); Keeney v.Fairfield Resources, Inc., 41 Conn. App. 120, 132 (1996); Cummingsv. Twin Tool Mfg. Co., Inc., 40 Conn. App. 36 (1996). Statutes are not to be read in ways that thwart their purpose. Caltabiano v.Planning Zoning Commission, 211 Conn. 662, 666-67 (1989);Evening Sentinel v. National Organization for Women,168 Conn. 26, 31 (1975). CT Page 6254
Accordingly, other states with implied revocation statutes have interpreted those statutes as not applying to wills in which bequests are made to a person who became the testator's spouse soon after the will is executed. In effect, the courts have held that to specify an inheritance or to state that there is to be none as to the person who the testator soon marries is to "make provision for" the imminent event of the marriage. See In reNeufeld's Will, 145 Misc. 442, 260 N.Y.S. 302 (1932); In reDeCoppet's Estate, 255 N.Y.S. 544, aff'd 260 N.Y.S. 990 (1932);Re Estate of Day, 131 N.E.2d 50 (Ill. 1955).
While the wording of the revocation statutes in the New York and Illinois cases cited above differs from that of the Connecticut revocation statute in some respects, the same result has been reached in a Rhode Island case involving a statute with fairly similar wording. Gen. Laws of R.I. § 33-5-9 provides in pertinent part as follows:
 The marriage of a person shall act as a revocation of a will made by him or her previous to the marriage, unless it appears from the will that it was made in contemplation thereof . . .
In D'Ambra v. Cole, 572 A.2d 268 (R.I. 1990), the testator had made a will six months before his marriage naming the woman he later married as sole beneficiary and executrix and making no mention of future marriage to her. The will contained no express statement that it was executed in contemplation of the testator's marriage. The Supreme Court of Rhode Island, overruling its prior ruling in Lessard v. Lessard, 273 A.2d 307 R.I. (1971), ruled that the revocation statutes should be read to effectuate the purpose of the legislature to benefit the surviving spouse: "[i]t was not intended in its interpretation to automatically defeat any well-defined intent on the part of the testator." The court then analyzed the fact that the will was made shortly before marriage to the woman named as sole beneficiary and concluded that "[t]his disposition evidences an intention by the testator to provide for his future spouse, thereby fulfilling the legislative purpose behind § 33-5-9." D'Ambra v. Cole,
572 A.2d 271. The Rhode Island court found that the will itself did not have to contain an express statement that it was being executed in contemplation of marriage where the timing, the naming of the future spouse as executrix, and the nature of the bequest constituted clear and convincing evidence that the will CT Page 6255 was made in contemplation of marriage to the woman the testator later married. D'Ambra v. Cole, 578 A.2d 272.
Ronald Erickson's will bequeathed all of his estate to the woman he was licensed to marry and did marry two days later. In his will, he named her executrix and designated her the guardian of his daughters, whose mother had previously died. The nature of these provisions, coupled with the extreme closeness in time of the marriage constitutes clear and convincing evidence of provision for the contingency of marriage. It would be preposterous to assume that Ronald Erickson was instead executing a will to make provisions that were to be revoked two days later.
The purpose of the statute, prevention of inadvertent failure to take into account the fact that the testator has a spouse at the time of death (either by providing for a bequest or stating the provision of no bequest) would be ill served by interpreting it to revoke provisions plainly and advertently made because of and to provide for a marriage two days later.
To rule in favor of revocation would be to reach an absurd result and defeat the actual expressed desires of a testator providing for his marriage in favor of a statutory scheme designed to address a situation that does not exist in this instance: the unintended failure to consider the subsequent marriage.
Conclusion
The court concludes that the will was properly admitted to probate in that it makes provision for the testator's marriage to Dorothy Mehring. The appeal is dismissed.
HODGSON, J.